FRED BEADEN *v.* BRANSFORD REALTY Co.

*(Nashville.*   December Term,·1920.)

1. **DAMAGES.**  Contract designated as an "option" held in effect a
sales contract entitling purchaser on default to recovery of pay-
ments, provision of forfeiture of which was in effect a penalty.

   A contract designated an "option," reciting that certain parties
   wished to purchase the property for a specified price, payable a
   part in cash and the balance in ninety-four monthly installments,
   purporting to give them "the right and option at any time within
   ninety-four months to buy and pay for" such property, and provid-
   ing that, if they should at any time elect not to exercise their
   option to buy the property, and should fail to make the payments
   provided for, or any of them, which failure should operate as an
   election not to purchase, the possession of the property should be
   surrendered to the other party to the contract, and at its request
   the sums paid should be treated as compensation for the use of
   the property and the price of the option, and as liquidated damages,
   *held* in effect a sale contract with provision for forfeiture of pos-
   session, entitling the purchasers on declaration of the forfeiture
   to a recovery of the money paid as well as amounts paid for taxes
   and insurance subject to a credit for reasonable rents;  the pro-
   vision as to vendor's retention of money paid being a mere penalty.
   (*Post, pp.* 402, 403.)

2. **ASSIGNMENTS.**  Of rights under contract to vendor held void.

   Assignment by purchasers who had paid more than $700 toward the
   purchase of the property to the vendor on vendor's payment to
   purchasers of $5 *held* void, since, if such payment was a mere
   gratuity given purchasers to enable them to move the assignment
   was without consideration, and, if it was in fact the consideration
   for the assignment, it was grossly and shockingly inadequate.
   (*Post, pp.* 404, 405.)

### FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. JOS. R. WEST, Special Chancellor.

THOS. G. WATKINS, for appellant.

VERTREES & VERTREES, for appellee.

MR. SPECIAL JUSTICE MALONE delivered the opinion of the Court.

Fred Beaden, a negro of average intelligence for one of his race, together with his wife, Mary, on September 9, 1910, entered into an option contract in writing with the Bransford Realty Company which recites in substance that the Bransford Realty Company owns a certain lot in Nashville (describing it), and that it proposes to erect thereon a house of a certain kind, to fence the lot, build a fence, and install a hydrant.

It further recites that Beaden and wife wish to become the purchasers of the property and propose to pay therefor $1,325 as follows: $283 in cash, "the receipt of which is hereby acknowledged," and the balance in ninety-four monthly installments.

It was further provided that during their use and occupation of said property Fred and Mary Beaden should pay taxes and insurance and repairs on the property.

Said contract further provides:

"The Bransford Realty Company is willing to sell said property to Fred Beaden and Mary Beaden for the consideration, and on the terms stated, and hereby gives Fred and Mary Beaden the right and option, at any time within ninety-four months, to buy and pay for the said property, and the said the Bransford Realty Company hereby agrees and binds itself, its successors and assigns, that it will at any time within ninety-four months from this date, at the request of the said Fred Beaden and Mary Beaden and upon payment of the amounts above stated, execute and deliver to Fred Beaden and Mary Beaden or their assigns a warranty deed conveying a good fee-simple title to said property and the usual covenants of right to convey and of seizin and warranty.

"In consideration of the cash payment of two hundred and eighty-three dollars, the receipt of which is hereby acknowledged, the Bransford Realty Company has delivered possession of said property to Fred Beaden and Mary Beaden and agrees that they may continue in the possession, use, and enjoyment of said property so long as they may make the payments as proposed by them as aforesaid. It is further agreed that, if said Fred Beaden and Mary Beaden shall at any time elect not to exercise their option to buy said property and fail to make the payments as proposed by them as aforesaid, or any of them, which failure to pay for thirty days shall operate as an election not to purchase, then the possession of said property shall be surrendered to the Bransford Realty Company at its request, and it may reenter and

take possession of said property, and this contract shall be and become, null and void, and the sums paid by Fred Beaden and Mary Beaden shall be treated as compensation for the use and occupation of said property, and the price of this option, and as liquidation damages for the failure of Fred Beaden and Mary Beaden to carry out and fulfill the terms of their proposition, under and in consideration of which he has obtained this option and withdrawn said property from the market.

"This 9th day of September, 1910.

"BRANSFORD REALTY COMPANY,

"By JOHNSON BRANSFORD, President.

"Attest: J. A. ALTHAUSER, Secretary.

"We accept the above option and agree to make payments as provided therein, and to be bound and to abide by all of its terms and conditions.

"FRED BEADEN.

"MARY BEADEN."

The recited cash payment of $283 was not in fact paid in cash. It seems these negroes owned another lot in the city of Nashville, with improvements thereon, and incumbered with two trust deeds aggregating $200. This property they transferred to the Bransford Realty Company, their equity being estimated at $283, and constituting the so-called cash payment.

It may here be remarked that the Bransford Realty Company, after paying off these incumbrances and expending the sum of $439 for repairs, sold the property thus traded in as cash payment for the sum of $1,350. It would thus appear that said company actually made some $700 out of this property.

Fred Beaden and his wife occupied the Bransford Realty Company's lot, the subject of said option contract, for forty-one months, surrendering possession thereof on March 9, 1914.

For many months of this period they made payments under said option contract, the total payments so made aggregating $423.36.

But finally they fell in arrears, and at the time of surrendering possession of the property were some sixteen months in default. During the occupancy of the premises, in August, 1913, the wife, Mary Beaden, died. It seems that she had been assisting in making the payments. She left six young children, whose support was, of course, dependent upon the unaided efforts of the complainant.

The Bransford Realty Company, beginning in 1912, wrote a series of letters, some twelve in number, extending over a period of more than two years. These letters concerned payment of past-due installments, and some of them threatened to take possession of the property, etc., and in one of them a detainer warrant was threatened.

Finally, on March 5, 1914, a letter was written requesting Beaden and wife to call at the company's office to discuss "a matter of special interest and importance to you."

Pursuant to this invitation, Beaden called at the company's office, and, after some conversation with representatives of the company, executed the following instrument:

"For and in consideration of the mutual agreement between the Bransford Realty Company and myself for the cancellation of the contract option executed by the Bransford Realty Company and Fred Beaden, a widower, on the 9th day of September, 1910, regarding the property hereinafter described, and the sum of $5 to as cash in hand paid by the Bransford Realty Company, receipt of which is hereby acknowledged,

"I, Fred Beaden, a widower, do by these presents transfer, convey, and assign unto the said Bransford Realty Company, a corporation, and to its successors and assigns, all of my right, title, claim, and interest of any nature or kind whatsoever in and to the following described property: . . . .

"To have and to hold the same to the said Bransford Realty Company, its successors and assigns, forever.

"Witness my hand this the 9th day of March, 1914.

[Signed] "FRED BEADEN."

This instrument was acknowledged for registration in the usual form.

It seems that the $5 was actually paid to Beaden, but there is some doubt under the testimony whether it was not given to pay the expenses of moving, rather than in payment of any rights surrendered under the instrument above quoted.

The Bransford Realty Company took possession of said premises, afterward entering into another "option contract" with one Manlove for the purchase thereof, at the agreed price of $1,550.

But, as appears from the company's answer, Manlove also "declined to exercise the option, and he and his wife

assigned their interest therein to this respondent on the 7th day of September, 1915, and are now occupying the property as respondent's mere tenants at a rental of $9.50 per month.''

Under these circumstances, the original bill herein was filed by Beaden on September 18, 1915, against the Bransford Realty Company seeking to recover the sum of $332.36, this sum representing the difference between the amount alleged to have been paid the company ($706.36) and the rental value of the premises for forty-one months at $9 per month, or $369.

It was charged that the assignment of March 9, 1914, was procured by fraud, and that, if the alleged consideration of $5 was paid for an interest worth $337.36, it was so grossly inadequate as to shock the conscience of the chancellor, and that a consideration so inadequate is conclusive that fraud was practiced.

The defendant answered, admitting that $423.36 was paid, claiming that $120 per year ($10 per month) would be a reasonable rental for said property, setting up the assignment of March 9, 1914, and denying all fraud or acts of oppression.

The special chancellor heard the case and rendered a decree which recites that the equities of the bill are fully met and denied by the answer, and are not sustained by the proof, and orders that the bill be dismissed at complainant's cost.

From this decree complainant prosecuted an appeal to the court of civil appeals. That court delivered an opinion, which in the main sustains the contentions of Beaden, holding that the consideration of $5 mentioned

144 Tenn.—26

in the assignment of March 9, 1914, was grossly inadequate, and could not support said assignment; and holding that Beaden was entitled to recover the difference between the total money and property paid out to the company, and the rental value of the property for forty-one months at $10 per month—to wit, the sum of $296.36, with interest, from the date of filing the bill.

The court held that complainant's contention of fraud in the procurement of the assignment of March 9, 1914, was not supported by the evidence.

Each party has filed a petition for *certiorari* in this court, the Bransford Realty Company complaining of the court of civil appeals because it allowed Beaden any recovery, and Beaden complaining because the rental was not calculated on the basis of $9 per month (thereby increasing his recovery), and because the court found that no fraud was practiced.

Dealing first with the petition of the Bransford Realty Company, it is evident that the decision of two questions is presented:

(1) Whether Beaden had anything to assign under his contract option.

(2) If so, whether the assignment of March 9, 1914, is valid and carried his rights to the Bransford Realty Company.

The first of these questions seems to be settled by the memorandum opinion of this court rendered at Nashville, December, 1916, in the case of *James Higdon* v. *Bransford Realty Company.*

In that case Chief Justice, NEIL, in passing upon a demurrer to the bill, said:

Beaden v. Bransford Realty Co.

"The substance of the bill is that under Exhibits A and B there was procured from the complainant more than one thousand ($1,000) dollars; that these exhibits, when properly construed, were really sales, or, at least, contracts of sale of the real estate described in them, but that they were so worded as to make a purchase of an option to buy; that these instruments declared, in effect, that although the complainant should go into possession, and should pay all the purchase money except one payment, should fail in making that payment, that this would be treated as an option not to buy, and that all of the money paid should be retained for the use of the premises or as liquidated damages.

"It is perfectly clear that this provision was a mere penalty. The bill charges that the defendant put complainant out of possession of the property, which was tantamount to saying a forfeiture was declared.

"We are of the opinion that these contracts exhibited with the bill were mere sale contracts with the provision for forfeiture of possession and all the purchase money that might be paid upon failure to make any payment. Under such circumstances, on declaration of the forfeiture, the rights of the parties should be settled upon the basis of permitting to the complainant a recovery of all the purchase money paid, as well as the amounts paid for taxes and insurance, subject to a credit for reasonable rents.

"The bill, when properly construed, presents a case involving these questions, and so contains equity. The demurrer, therefore, denying equity in the bill must be overruled."

As to the second question, if it be considered under the proof that the $5 paid to Beaden was merely a gratuity given him by the company to enable him to move, the assignment would be wholly without consideration on his part.

If it be considered that the sum of $5 was paid by the company for the transfer of his rights under the option contract amounting in value to approximately Three Hundred ($300.00) Dollars, we are constrained to concur in the conclusion of the court of civil appeals that such consideration was grossly and shockingly inadequate.

We also concur in the conclusion of that court that it cannot be claimed on behalf of defendant that Beaden was relieved by reason of said assignment from his obligation to make further payments under the option contract, and that this constituted a further consideration for the assignment. The contract itself provides, in substance, that Beaden and wife may elect to cease making payments, and that default for thirty days shall be considered such an election, the language of the contract being:

". . . . That if said Fred Beaden and Mary Beaden shall at any time elect not to exercise their option to buy said property and fail to make the payments as proposed by them as aforesaid, or any of them, which failure to pay for thirty days shall operate as an election not to purchase, then the possession of said property shall be surrendered to the Bransford Realty Company at its request. . . ."

That the officials of the company so construed the contract is shown by the following extract from the depo-

sition of its secretary, Mr. Althauser, on his cross-examination:

"Q. Do you consider this option agreement a binding instrument?

"A. I do. I do not consider that it is binding on Fred Beaden to make the payments set out therein if he elects not to do so."

It is also insisted on behalf of the Bransford Realty Company that the withdrawal of this property from the market during the time that Beaden and wife occupied it constituted a further consideration.

This would seem to be a contention going rather to the true meaning and intent of the option contract, as tending to show that the parties to said contract had in mind that something more than rent should be paid for the use of the property. This contention, however, has been resolved against the company in the case of *Higdon* v. *Bransford Realty Company, supra.*

Coming now to the petition of Beaden, it seems unnecessary to pass on his contention that the assignment was procured by fraud, even if this matter is not settled by a concurrent holding of the chancellor and court of civil appeals—a point not necessary to decide.

As to his second contention that the recovery allowed by the court of civil appeals should have been calculated on a rental value of $9 per month instead of $10 a month, we have examined the record, and are content to affirm the holding of the court of civil appeals in this behalf.

It results that both petitions will be denied.