# PATTERSON v. DAVIS.—192 S. W. (2d) 227.

Western Section. June 14, 1945.

Petition for Certiorari denied by Supreme Court, January 11, 1946.

T. B. Passmore, of Memphis, for complainant.

Alfred Sohm and C. C. Cline, both of Memphis, for defendant.

ANDERSON, P. J. This is a bill for specific performance of an alleged contract for the sale of a small house and lot. The chancellor granted the relief sought and the defendant appealed. The only defense necessary to be noticed is that raised by a plea of the statute of frauds.

The defendant, C. A. Davis, owned the house and lot in question. On or about October 6, 1941, he entered into a written contract with Alonzo Patterson, husband of the complainant, Margaret Patterson, for the sale of the property at a price of $1,000 on the terms of $25 cash and the balance at the rate of $12 per month beginning November 1, 1941, the payments to be applied to interest, taxes, insurance premiums and repairs, as money was

advanced therefor, the balance to be applied to the reduction of the principal indebtedness.

The contract provided that if the purchaser made the first 36 installments as they matured, the seller would give him a warranty deed to the property on condition that he should contemporaneously execute a trust deed, securing the remainder of the deferred payments.

It was provided that time was the essence of the contract and that if the purchaser should fail for 60 days to pay any monthly payment the contract at the option of the seller should be null and void without notice and that the latter should retain all payments theretofore made as rent and liquidated damages and might sell the property to other parties. It was also stipulated that the purchaser or the occupant of the property should become the tenant of the seller upon the forfeiture of the contract at a monthly rental of $12.

Patterson made his last monthly payment on October 15, 1942. This payment left him in arrears about $18. On or about that date he abandoned his wife and children, leaving them in the house. His wife declined to make the payments and those maturing in November, December, January and February were not paid; nor was the defendant able to get in touch with Patterson. Davis finally came across Patterson in February, 1943, and took up with him the question of the arrearage on the contract. Patterson stated that he was contributing to the support of his wife and children through the Juvenile court and for this reason did not intend to make any further payments; that the defendant would have to look to Margaret Patterson, the wife, for the rent. Patterson was then six and a half months in arrears in monthly payments and the defendant thereupon informed him he elected to cancel the contract and intended to hold him liable for

the sum of $78 in accordance with the provision to the effect that in the event of cancellation the purchaser would be liable for the rent at the rate of $12 per month. This on the theory that during six and a half months the property had been occupied by Patterson's family and he was liable therefor, notwithstanding he did not occupy it himself. Patterson agreed to the cancellation and promised to pay the $78, but he failed to do so. Thereupon the defendant sued him for that sum in the court of general sessions, obtaining a judgment for $78, upon which he was able to realize nothing. The proceedings in the general sessions court show that the sum was sued for as rent of the property. Thereafter and before this suit was filed, Patterson died.

The complainant continued to occupy the premises and paid $12 each month from March, 1943, through August, 1944. Through her attorney she tendered $12 in September, 1944, which was refused because it was accompanied by a stipulation that it was to apply on the purchase price of the property.

The complainant does not contend that she herself had a written agreement with the defendant for the purchase of the property, but only that after her husband, Alonzo Patterson, had abandoned her and defaulted in the monthly payments, the defendant orally agreed to substitute her as purchaser in the place of her husband, on condition that she pay the amount he was in arrears, promising her a written contract to that effect, which he failed or refused to execute.

Complainant admits that there was a dispute between her and defendant as to the amount of her husband's arrearage and hence as to the terms of the alleged parol sale to her. She says that in the negotiations about the matter the defendant claimed that Patterson was in ar-

rears $78 and demanded that she pay this amount as a condition of the sale to her, whereas she claimed that the arrearage was some $42 less. She concedes that this dispute prevailed throughout a large part of the time she was making the monthly payments of $12 and was finally ended (apparently in the summer of 1944), when defendant agreed to accept $50 as representing the arrearage. She says that following this concession instead of tendering the $50 to defendant she gave it to Mr. Passmore, her attorney, who seems to have gotten into the controversy through the complainant's father whom he was representing in connection with the purchase of another piece of property from the defendant. Mr. Passmore testified that he later offered to pay the $50 required by the defendant, but that this offer was declined and he thereupon brought this suit.

Defendant denies that he sold the property by parol or otherwise to the complainant but says he agreed to do so upon the same terms he had sold it to her husband and to give her a written contract to that effect provided she paid the $78 he was in arrears; that this she was unable or unwilling to do and finally he agreed to accept $50 in lieu of the $78; that when Mr. Passmore representing complainant intervened in the matter he learned that she had misrepresented the facts to her attorney and he therefore declined to accept the $50 offered by Mr. Passmore or to have any further dealings with complainant and later sold the property to his codefendants.

He says that pending the negotiations he had rented the property to complainant at a rental of $12 per month which she paid as such until September, 1944, when through her attorney she tendered $12 with a stipulation that it was to apply on the purchase price; that this he

declined to accept because no agreement for a sale had been reached at that time.

The statute of frauds, relied upon by the defendant, is contained in Code Section 7831, the pertinent part of which is that no action shall be brought upon any contract for the sale of real property unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him thereunto lawfully authorized.

■■ Construing this statute, it is held in this jurisdiction that the phrase, "signed by the party to be charged therewith," means the owner of the land. Whitby v. Whitby, 36 Tenn. 473; Lee v. Cherry, 85 Tenn. 707, 4 S. W. 835, 4 Am. St. Rep. 800; Lusky v. Keiser, 128 Tenn. 705, 164 S. W. 777, L. R. A. 1915C, 400. The same authorities hold that evidence of the acceptance of the contract upon the part of the purchaser may be in parol as at common law before the statute of frauds.

■■ As said, the complainant does not contend that there was any written agreement between her and the defendant for the sale and purchase of the property. Laying aside altogether the latter's evidence and looking to that of the complainant alone, it is apparent that, reduced to its essentials, the substance of her contention is that after her husband's default the defendant by parol sold her the property under a contract similar to that by which he had sold it to her husband, allowing her credit for all that had been paid him, and at the same time promising to give her a "hand-writing" showing that she was buying and not renting, all on condition that she pay the $78 which her husband was in arrears; that defendant later reduced this to $50 which, through her attorney she finally offered to pay, but that defendant declined the

offer and failed or refused to carry out his agreement to reduce his contract with her to writing, and instead sold the property to his co-defendants, the Jones, who took with full knowledge of the complainant's rights. Such an agreement, if we assume it to have been made, avails nothing, for a parol contract, unenforcible under the statute, is not made binding by a further parol agreement to reduce it to writing. 4 Am. Jur. 368; 37 C. J. S., Frauds, Statute of, sec. 91, p. 592.

It is obvious that to hold otherwise would be a palpable evasion of the statute, rendering it useless against the evils it is designed to forestall.

■ ■ It is argued however that since the agreement was in effect no more than that complainant should be substituted for her husband as the purchaser of the property, the writing evidencing the contract between the latter and the defendant was available to the complainant as a memorandum meeting the requirements of the statute. She insists in this connection that the contract with the husband was assimilable to a title bond which may be transferred by delivery or assignment in writing. This is true as to title bonds. Smith v. Peace, 69 Tenn. 586, 591; Robinson v. Williams, 40 Tenn. 540; McSpadden v. Starrs Mountain Iron Co., Tenn. Ch. App., 42 S. W. 497. Payment of a consideration by the assignee to the assignor of such an instrument vests the former with the rights of the latter. Wilburn v. Spofford, 36 Tenn. 698.

■ Assuming for present purposes that the contract between the defendant and the complainant's husband was assimilable to a title bond, there is no evidence to warrant the conclusion that there was any assignment of it to the complainant by her husband by delivery or otherwise; in fact, she does not claim that there was; nor

indeed does she show that she ever saw that contract or that she was familiar with its provisions, except perhaps in a general way; much less that there was delivery to her by any one. Upon the other hand she expressly bases her alleged rights not upon any transfer to her by her husband of his contract, but upon a parol agreement with the defendant to substitute her for her husband as the purchaser of the property giving her the benefit of all that he had paid on the purchase price. In these circumstances we think she cannot rely upon the husband's contract as a memorandum meeting the requirements of the statute. See generally, 37 C. J. S., Frauds, Statute of, pp. 662, 663, secs. 179, 180; 49 Am. Jur. 649 sec. 337; Thompson v. Ford, 145 Tenn. 335, 236 S. W. 2; Wilson v. Winters, 108 Tenn. 398, 67 S. W. 800; and cf. Lusky v. Keiser, 128 Tenn. 705, 164 S. W. 777, L. R. A. 1915C, 400; Henderson v. Henderson, 158 Tenn. 452, 457, 14 S. W. (2d) 714.

■ For another reason the contract with the husband is not available to the complainant as a memorandum such as is required by the statute. This is that prior to the alleged parol agreement between the complainant and the defendant it was effectively cancelled by the defendant pursuant to its pertinent terms and the cancellation acquiesced in by Patterson. See, Pomeroy's Equity Jurisprudence, sec. 455. The defendant not only so testified without dispute but it likewise is undisputed that he thereafter sued and obtained a judgment against Patterson for the $78 which the latter was in arrears, describing the sum being due as ''rent of the property''. Patterson allowed the judgment to become final and necessarily acquiesced therein by failing to pursue the matter further. Therefore the conduct of both the defendant and Patterson was inconsistent with the continuance of

the contract and it was manifestly regarded by both the parties as having been cancelled. See 12 Am. Jur. 1014, 1015, secs. 434 and 435.

If, as appears, Patterson had no objection to the cancellation, it seems clear that the complainant can make none.

■ Apart from his failure to seasonably assert them, whatever rights Patterson himself may have had upon being notified by the defendant that he elected to cancel the contract, whether it was the right to have the forfeiture set aside in equity upon the payment of the amount he was in default, or the right to recover the difference between the amount he had paid and the reasonable rental value of the premises, if there was any difference, which we think was not the case (Beaden v. Bransford Realty Co., 144 Tenn. 395, 232 S. W. 958), it is manifest, we think, that a transfer of such rights could not have been effected by an agreement between the complainant and the defendant without the acquiescence of Patterson and, as said, it is nowhere claimed that Patterson was a party to any agreement between the other two parties.

■ ■ It is apparent, therefore, that in this aspect of the case the most that can be said is that complainant relies upon an oral agreement with the defendant for the revival of the written contract between the defendant and her husband, by the terms of which she was put in the latter's place. But as to this the law is against her. A parol agreement between defendant and Patterson himself to revive the written contract after its cancellation would have been unenforcible as against a plea of the statute. The rule is that where a written contract for the sale of land has ceased and terminated by its own terms upon the happening of a certain contingency, or

by the action of the parties under it, an oral agreement to revive it is within the statute and unenforcible. 49 Am. Jur. 369; 37 C. J. S., Frauds, Statute of, sec. 128, p. 619.

Illustrative of the cases supporting this rule is the well-reasoned one of Thompson v. Robinson, 65 W. Va. 506, 64 S. E. 718, 17 Ann. Cas. 1109, involving the contract for the sale of all the coal in a certain tract of land. The contract provided that upon payment of a part of the purchase money by a specified date, the vendor would execute a deed and if not so paid the contract should be void. It was further provided that the provision for payment was of the essence of the contract. The purchaser failed to make the payment required by the contract. In a suit for specific performance he relied upon an oral extension of time made after the day for payment specified in the contract. Upon a careful review of the authorities, the court held that the oral agreement was within the statute and not binding on the vendor.

In the note appended to the report of this case in 17 Ann. Cas. 1111, 1112, it is said to have been held in the case of Scott v. Sander's Heirs, 6 J. J. Marsh., Ky., 506 (an opinion to which we do not have access), that upon the same principle, a bond for the conveyance of land upon which a judgment has been recovered cannot be revived by parol for the parol agreement could not amount to a release of the judgment or restore vitality to the bond. Cf: McSpadden v. Iron Co., supra. A number of other cases will be found in the notes appearing in 102 Am. St. Rep. 233, and 17 Ann. Cas. 1111.

Finally, we may add that if there be accepted the complainant's view that the monthly payments made by her were in fact made on the purchase price of the property and not as rent, her problem would not be solved.

Such payments did not operate to avoid the bar of the statute. McSpadden v. Iron Co., supra; see also, Goodloe v. Goodloe, 116 Tenn. 252, 92 S. W. 767, 6 L. R. A. (N. S.), 703, 8 Ann. Cas. 112.

It follows that we think the plea of the statute of frauds must be sustained  The decree is accordingly reversed and the bill dismissed at the cost of the defendant.

Ketchum and Baptist, JJ., concur.