James B. WATSON, Jr., Trustee

v.

Charles M. McCABE et al.

v.

Joe N. BUTLER, Jr., and Dorothy G. Butler.

No. 74–75–NA–CV.

United States District Court,
M. D. Tennessee,
Nashville Division.

Sept. 9, 1974.

Fyke Farmer, Nashville, Tenn., for plaintiff.

David G. Gray, Charles H. Anderson, U. S. Atty., Nashville, Tenn., for Charles M. McCabe.

Hunter B. Short, Nashville, Tenn., for L. H. Jordan.

## MEMORANDUM

MORTON, District Judge.

This action seeks *specific performance* of a contract for the sale of realty arising from a foreclosure sale pursuant to the terms of a trust deed securing an indebtedness due the United States of America. Although various third party and cross claims have been filed, the principal issue involves the enforceability of the contract of sale. The disposition of the collateral issues is dependent upon determination of the principal issue and will be the subject of later hearings.

There is no real ground for dispute as to the facts which bear upon the central issue. The facts are essentially that Food Systems, Inc., a Tennessee Corporation, executed on November 10, 1969, a deed of trust to W. K. Beasley, Trustee, which was recorded in the Register's Office for Davidson County, Tennessee in Book 4385, page 103, conveying to the trustee named certain real estate known as 8456 Highway 100, Nashville, Tennessee, to secure the payment of an indebtedness in the principal amount of $65,000.00 with interest to the order of The First American National Bank, Nashville, Tennessee. Food Systems also executed and delivered to First American National Bank, Nashville, Tennessee, a Security Agreement dated November 10, 1969, covering certain personal property evidenced by a Financing Statement filed in the Office of the Secretary of State of Tennessee, on December 10, 1969, as No. F7678.

By assignment dated October 3, 1973, First American National Bank assigned to Small Business Administration the original note in the principal amount of $65,000.00, the deed of trust and Security Agreement securing same. This instrument of assignment was recorded in Book 4762, page 995, Register's Office, Davidson County, Tennessee and filed in the Office of the Secretary of State of Tennessee on October 10, 1973, as No. 8833R.

W. K. Beasley, Trustee named in the deed of trust having resigned, Small Business Administration, the holder of the indebtedness secured by the deed of trust, on November 7, 1973, pursuant to the power conferred therein, nominated and appointed James B. Watson as successor or substitute trustee. This instrument of appointment was recorded in Book 4763, page 815, Register's Office for Davidson County, Tennessee.

Default having been made in the payment of the indebtedness secured by the aforesaid instruments, Small Business Administration, the legal holder of the note secured thereby, declared the entire balance of the indebtedness due and payable and made demand on the obligors

for payment; payment was not made. In accordance with the provisions of the deed of trust and Security Agreement, Small Business Administration requested James B. Watson as successor or substitute trustee to foreclose the deed of trust and Security Agreement by exercise of the power of sale conferred thereby. Small Business Administration prepared a Notice of Sale and requested James B. Watson to publish it in a newspaper; in accordance with this request James B. Watson published the Notice of Sale three times in the *Nashville Record,* which is published in Nashville, Tennessee. The Notice of Sale gave notice according to the provisions of the security instruments and the law of Tennessee that on the 14th day of December, 1973, at 12 o'clock noon, at the front door of the Davidson County Courthouse, Nashville, Tennessee, the substitute trustee would auction to the highest bidder for cash the specifically described real and personal property covered by the deed of trust and Security Agreement to satisfy the indebtedness secured by the Small Business Administration, the legal holder of the note secured by the instruments. The Notice of Sale contained the following statement:

"I will convey only such title as is vested in me as Substitute Trustee, and the aforesaid property will be sold and conveyed without covenants or representation or warranty, and subject to validly liened ad valorem taxes, if any which may be outstanding against the same."

At the time of the publication of the Notice of Sale and the sale, the real property described in the previously mentioned deed of trust was encumbered by a prior deed of trust securing an indebtedness held by Security Federal Savings & Loan Association, Nashville, Tennessee, in the amount of approximately $36,500.00, payable in monthly installments of $532.04. James B. Watson, Trustee, did not know of this prior encumbrance when he published the No-

tice of Sale; the notice prepared by Small Business Administration did not state this fact.

On the 14th day of December, 1973, at 12 o'clock noon at the front door of the Davidson County Courthouse, James B. Watson read the Notice of Sale which had been published in the *Nashville Record* and called for bids on the real property first. The first bid of $36,000.00 was made by A. W. (John) Chaffin, at which time a representative of Small Business Administration asked Mr. Watson to state that the sale was being made subject to the lien of a prior deed of trust securing an indebtedness held by Security Federal Savings & Loan Association. Mr. Watson had been given a slip of paper by another representative setting out the exact amount of the indebtedness owing to Security Federal Savings & Loan Association secured by the prior deed of trust. He stated this amount and further stated that the monthly payments payable under the prior deed of trust were $532.04, that Security Federal would not permit the mortgage indebtedness to be paid off but instead would be amenable to the purchaser's assuming the monthly payments and paying them as they became due. Mr. Watson expressly stated to Mr. Chaffin that his bid of $36,000.00 meant that the total cost of the property to him would be between $72 and $73 thousand dollars and asked him whether he wished to withdraw his bid. Mr. Chaffin replied that he desired to let his bid stand. This discussion was in public, in the presence of all persons present at the sale, and in tones and voices loud enough for everyone to hear. Other bids were received. Before the bidding was closed, someone inquired as to what taxes encumbered the property. Mr. Watson replied that he did not know the amount, but he presumed that the tax payments were provided for by inclusion in the monthly installments payable to Security Federal under the terms of the first deed of trust. He repeated his previous statement concerning the first deed of trust when Mr. Chaffin's first

bid was offered, and he also replied that the sale was subject to the first deed of trust.

Charles M. McCabe, defendant, offered $42,000.00, which was the highest bid for the real estate. During the entire auction of the property, Mr. McCabe was standing with the other bidders around Mr. Watson.

It has been stipulated that prior to the aforementioned sale, Mr. McCabe received a letter from the Small Business Administration dated December 6, 1973, together with a mimeographed copy of the notice of sale. The letter contained the following statement:

"The real estate will be sold seperate (sic) from the equipment and will be sold subject to a prior lien of approximately $36,500, payable $532.04 per month, which can be assumed."

Mr. McCabe testified that he turned the letter and notice of sale over to his attorney prior to the sale.

Mr. McCabe knew that the deed of trust securing the indebtedness to Security Federal Savings & Loan Association was prior to the lien of the deed of trust under which the plaintiff, Watson, was selling the property as substitute trustee. In April, 1973, Mr. McCabe submitted to the owners of the property a signed offer which offered to purchase the real estate and personal property for $125,000.00, which was to be paid partly in cash, which was to assume the two deeds of trust upon the real estate, and which was to secure the remainder of the purchase price by a note. In this offer he expressly stated the exact amount of the balance of the indebtedness owing to Security Federal and that the deed of trust was a first lien. He also set out the exact balance of the indebtedness then held by First American National Bank and expressly stated that the deed of trust securing same was a second lien. On October 30, 1973, Mr. McCabe submitted another signed offer to the owners of the property, L. H. Jordan and C. H. Kavanagh, proposing to assume the notes held by Security Fed-

eral and First American National Bank. Two days before the sale on December 14, 1973, Mr. McCabe's attorney wrote a letter to the attorney representing Mr. Jordan canceling and withdrawing all offers of purchase which Mr. McCabe had made.

The real estate was knocked down by Mr. Watson to Mr. McCabe, since his bid of $42,000 was the highest.

Mr. Watson, after the auction of the real estate, offered the personalty for sale. Mr. McCabe was the highest bidder and the personalty was sold to him for $10,500. After the knocking down of the real and personal property to him as the highest bidder, Mr. McCabe told Mr. Watson that he would go to his office on Monday, December 17th, to pay him the purchase price and receive the deed and bill of sale.

On Monday, December 17th, Mr. Watson telephoned Mr. McCabe to remind him that the monthly payment of $532.-04 due Security Federal under the first mortgage would bear a penalty if not paid that day. Mr. McCabe did not go to see Mr. Watson on Monday, December 17th, but he, accompanied by his attorney, went to Mr. Watson's office on Tuesday, December 18th. Mr. McCabe took the position that it was his understanding that his bid of $42,000.00 for the real estate could be paid by deducting from $42,000.00 the balance of the first mortgage indebtedness held by Security Federal and paying to Watson only the amount of the difference in cash. Mr. Watson took the position that he had plainly announced at the sale in the presence and hearing of Mr. McCabe that the real estate was offered for sale subject to the first mortgage and consequently McCabe was obligated to pay $42,000.00 in cash as the highest bidder for the real estate. Watson showed McCabe and his attorney the deed which he had prepared reciting the sale to McCabe of the real estate for $42,000.00 in cash and the personalty for $10,500.00 in cash, a total of $52,500.00. McCabe made no payment for either the real or

personal property. Consequently, Watson did not deliver to him the deed which he had prepared.

Mr. McCabe's attorney wrote the following letter to Mr. Watson:

"January 4, 1974

"Mr. J. B. Watson, Jr.
Substitute Trustee
Stahlman Building
Nashville, Tennessee 37201

"RE: Auction on December 14, 1973, of 1.02 acres on Highway 100 and restaurant equipment

"Dear Mr. Watson:

"You will recall that on December 18, 1973, Mr. Charles McCabe and I came to your office to accept your Substitute Trustee's Deed to the property auctioned on December 14, at the Davidson County Courthouse. It was at this meeting that the misunderstanding or disagreement about the terms of the auction came to light. It was your position that Mr. McCabe's bid of $42,000.00 for the real property and $10,500.00 for the personalty was in addition to the existing mortgage of approximately $36,500.00 making, according to your figures, a total purhase price of approximately $89,-000.00. Mr. McCabe's position was then, and is now, that his bid included the mortgage and he refused to accept the deed which you had prepared which did not show his assumption of the mortgage as a part of the purchase price.

"Apparently there was discussion at the time of the auction about the mortgage and its assumption and Mr. McCabe states that it was his clear understanding from that discussion that the bid price was to include as a part of the purchase price the balance due on that mortgage. Since that time I have received the statements from three other people who attended the auction, one of whom was a bidder, and these three people all got the same understanding as Mr. McCabe. Accordingly, I respectfully request that you prepare a new deed to convey the property to Mr. McCabe showing a total purchase price of $52,500.00 to be satisfied in part by the then balance due on the mortgage and the balance of which shall be paid you in cash when the deed is ready for delivery.

"I would like to call to your attention that since the auction Mr. McCabe has gone to considerable trouble and expense to protect the property from the freezing weather we have been enjoying and to insure the same against fire. Mr. McCabe can't continue in this fashion on a piece of property to which he has no deed and I hope that we can resolve this matter promptly.

"Yours very truly,

/s/ David

David G. Gray

"DGG: ar
"cc: Small Business Administration
Security Federal Savings and
Loan Building
Nashville, Tennessee 37219

"Attention: Mr. Joe E. Dixon"

It is clear from the evidence submitted in this case that defendant McCabe was fully aware that the property was being auctioned subject to the first mortgage thereon. He knew that his bid of $42,000.00 was in addition to the balance due on the first mortgage indebtedness. The court therefore rejects his testimony to the contrary. It is also clear that the plaintiff, the representative of the United States and the defendant McCabe understood that the sale of the realty and personalty were dependent one upon the other. The offer of sale of the personalty and the bids thereon were affected by the price bid on the realty. The government representatives refrained from bidding when the offered prices exceeded the balance due on the mortgage, i. e., the sum of $3,000.00. (Since the balance due on the mortgage was $3,000.00, Mr. McCabe's total bid would constitute approximately $45,000.00.)

After the ostensible sale no written memorandum evidencing the transaction was signed by the plaintiff, the trustee named in the trust deed (by substitution), nor by any agent of the United States of America. The first writing signed by anyone relative to the sale was this suit's original complaint, which was signed only by plaintiff's attorney and not by plaintiff.

## LAW

The Tennessee Statute of Frauds, T.C.A. § 23–201, provides in pertinent part as follows:

"23–201. Writing required for action.—No action shall be brought:

\* \* \* \* \* \*

(4) Upon any contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer term than one year; or,

\* \* \* \* \* \*

Unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him thereunto lawfully authorized."

Tennessee is one of two states in which the "party to be charged" is always the owner of land or an interest therein. Patterson v. Davis, 28 Tenn. App. 571, 192 S.W.2d 227 (1945), cert. denied by Supreme Court of Tenn. (1946). (Note: There are innumerable cases of the Tennessee courts so holding.) As specified in the statute, the contract of sale or a memorandum thereof can be signed by an "authorized" agent. However, the authority of the agent or evidence of his agency need not be in writing. Texas Co. v. Aycock, 190 Tenn. 16, 227 S.W.2d 41 (1970). The sale of land by a trustee pursuant to the terms of a trust deed is within the provisions of the Statute of Frauds. Fortner v. Wilkinson, 210 Tenn. 201, 357 S.W.2d 63 (1962); Adams, Trustee v. Scales, 60 Tenn. 337 (1872).

It is not necessary that the memorandum be contained in one document. It may be contained in several writings. Batey v. D. H. Overmyer Warehouse Company, 60 Tenn.App. 310, 446 S.W.2d 686 (1969).

The acceptance of the buyer can be established by parol evidence. Patterson v. Davis, *supra*. Delivery of the memorandum to the purchaser is not essential. Black v. Black, 185 Tenn. 23, 202 S.W.2d 659 (1947).

The written memorandum, in order to satisfy the statute, must contain the essential terms of the contract, expressed with such certainty that they may be understood from the memorandum itself or some other writing to which it refers or with which it is connected without resorting to parol evidence. Lee v. Cherry, 85 Tenn. 707, 4 S.W. 835 (1887); Hudson v. King, 49 Tenn. 560 (1870).

The memorandum may be signed at anytime after the contract and before suit is brought to enforce it. It may not be effectively signed after suit is brought. Hudson v. King, *supra*. Three illustrations of the last principle of law follow:

(a) The court stated in Hudson v. King, *supra*:

" . . . It is immaterial under the statute as to the form of the instrument or the time of its execution, or as to the number of papers which connected together, make out the memorandum, if they inherently show it without the necessity of resorting to parol evidence to identify the land and explain the contract. It may be executed at any time after the contract and before the action. It is doubted whether it might not be after the action brought, because the statute only means to secure written evidence of the contract. The general rule is stated thus: 'It must contain the essential terms of the contract, expressed with such a degree of certainty that it may be understood without recourse to pa-

rol evidence to show the intention of the parties.' Brown on Frauds, §§ 348, 371."

(b) The facts in Huffine v. McCampbell, 149 Tenn. 47, 257 S.W. 80 (1923) were that the contract to sell land was evidenced by a letter from the property owner's attorney, an unsigned deed and a voluntary deposition in other litigation signed by the property owner in which the letter and the unsigned deed were identified as containing terms of the oral contract. The court held that the memorandum satisfied the provisions of the statute of frauds.

(c) In the case of Davis v. Ross, 50 S. W. 650 (Tenn.Ch.App.1898), a complaint was filed to disaffirm an oral contract of sale of realty. Even though the pleading set forth the contract terms and the description of the realty, the Tennessee Court of Chancery Appeals held that the pleading was not such a memorandum as to satisfy the statute of frauds.

 If the plaintiff, trustee, had transcribed on the aforesaid auction's advertisement of sale that he had sold the property for $42,000.00 to defendant McCabe, it is beyond dispute that such transcription signed by plaintiff would have satisfied the statute. Plaintiff asserts, however, that the filing of the complaint in this court satisfies the statutory requirement. He cites no authority for such theory. Accordingly, based on the rationale of the authority previously cited, it is the holding of this court that the filing of a complaint incorporating the terms of an oral contract does not satisfy the requirements of the statute. Furthermore, even if filing a complaint could meet the statutory requirements, the one filed in the cause would not be sufficient. The complaint is not signed by the plaintiff (the person to be charged) but by plaintiff's attorney. There is no proof in this record that plaintiff's attorney was "lawfully authorized" to execute a written memorandum of sale. Authority to prepare and file a complaint does not empower an attorney to execute contracts or evidence thereof.

### CONCLUSIONS

1. The contract for the sale of the realty and personalty in question to defendant McCabe cannot be specifically enforced.

2. The property in question will be readvertised and sold pursuant to the terms of the security devices and a report of the sale will be filed with this court.

3. All other matters are reserved pending the resale and report.

An appropriate order will be entered.