ALLEN D. CURTIS,                    )
                                    )
     Plaintiff/Appellant,           )     Appeal No.
                                    )     01-A-01-9605-CH-00211
and                                 )
                                    )
CAROLYN JUNE CURTIS,                )     Sumner Chancery
                                    )     No. 94C-324
     Intervening Plaintiff/         )
     Appellant,                     )

FILED

December 4, 1996

Cecil W. Crowson
Appellate Court Clerk

v.                                  )
                                    )
WILLIAM M. RICE, and                )
RICE & PAPUCHIS CONSTRUCTION        )
COMPANY, INC.,                      )
                                    )
     Defendants/Appellees.          )


COURT OF APPEALS OF TENNESSEE

MIDDLE SECTION AT NASHVILLE


APPEAL FROM THE CHANCERY COURT FOR SUMNER COUNTY

AT NASHVILLE, TENNESSEE


THE HONORABLE TOM E. GRAY, CHANCELLOR

JERRY C. SHELTON
Lyell, Seaman & Shelton
611 Commerce Street, Suite 2704
Nashville, Tennessee  37203
     ATTORNEY FOR PLAINTIFF/APPELLANT

CLINTON L. KELLY
Kelly and Kelly
629 East Main Street
Hendersonville, Tennessee  37075
     ATTORNEY FOR INTERVENING PLAINTIFF/APPELLANT

JAMES C. BRADSHAW, III
Wyatt, Tarrant & Combs
313 East Main Street, Suite 1
Hendersonville, Tennessee  37075
     ATTORNEY FOR DEFENDANTS/APPELLEES


REVERSED AND REMANDED


SAMUEL L. LEWIS, JUDGE

O P I N I O N


This is an appeal by plaintiffs/appellants, Allen D. Curtis and his wife, Carolyn June Curtis, from a decision of the chancery court which dissolved the partnership formed between Curtis and defendant/appellee, William M. Rice, and which distributed the partnership's assets.[1]  The facts out of which this matter arose are as follows.

In 1976, Mr. and Mrs. Curtis acquired a tract of land as tenants by the entirety.  They later subdivided a portion of the land into 21 lots ("The Hollows") and recorded a plat.  According to the plat, a 10 foot strip of land ran along the western boundary of The Hollows' access road and into lot 21 of The Hollows.  To the west of the 10 foot strip and lots 15-21 was another parcel of land known as the Yearwood Property.

The Hollows' access road was constructed by Rice & Papuchis Construction Company, Inc., William M. Rice, President.  At some point, Rice moved some top soil for Curtis.  As compensation for Rice's services, Rice claimed that Curtis initially conveyed lot 21

---

[1] For the purposes of this opinion plaintiff/appellant, Allen D. Curtis, will be referred to as "Curtis." Intervening plaintiff/appellant, Carolyn June Curtis, will be referred to as "Mrs. Curtis."  When discussing Curtis and Mrs. Curtis together, they will be referred to as appellants.  Defendants/appellees, William M. Rice and Rice & Papuchis Construction Company, Inc., will be referred to as "Rice."

of The Hollows to him orally. Rice then claimed that Curtis later changed the compensation and orally conveyed a one-half interest in lot 14 and a one-half interest in lot 21 to Rice. Curtis, however, claimed that he merely gave Rice a security interest in lot 14. In addition, Curtis claimed that the contract for the road construction included moving the soil and that he paid the contract price in full.

Eventually, Rice and Curtis entered into an oral partnership agreement to purchase the Yearwood Property and to subdivide and sell it. Rice agreed to obtain the financing, and the parties purchased the land. Curtis orally agreed to contribute the 10 foot strip to the partnership. In addition, Rice claimed that he and Curtis orally agreed to contribute their interests in lots 14 and 21 to the partnership.[2] Rice and Curtis filed three plats. The final plat subdivided a portion of the Yearwood Property and included the ten foot strip and lot 21 of The Hollows. This subdivision became known as The Hollows Section Two. When each of The Hollows Section Two lots which included frontage formed by the ten-foot strip and the former lot 21 of The Hollows was sold, the deeds were signed by Curtis, Rice, and Mrs. Curtis. Prior to the filing of the lawsuit, all of The Hollows Section Two lots were sold except for lot 23.[3] Pursuant to the oral partnership agreement, Rice and Curtis used the proceeds from the sales of The Hollows Section Two lots to pay off the loan.

Curtis later had a plat prepared for the remaining portion of the Yearwood Property. The resulting plat used lot 14 of The Hollows as access to and from what was intended to become The

---

[2] The parties never executed any documents conveying any property to the partnership. Instead, Rice and Curtis agreed that all real property contributions would remain in the name of the individual partners until the partners sold the property to third parties.

[3] Lot 23 of The Hollows Section two is comprised of the Yearwood Property and a portion of the ten foot strip. The parties do not dispute the partnership's interest in this lot.

Hollows Section Three. The Sumner County Planning Commission approved the plat and Rice signed it. Curtis, however, never signed the plat, and neither party ever recorded it.[4]

Ultimately, Curtis filed a complaint for the dissolution of the partnership. In his complaint, Curtis admitted that he contributed the 10 foot strip and lot 21 to the partnership. Rice claimed that lot 14 was also part of the partnership's assets. After an unsuccessful settlement conference, the court ordered an independent survey of several pieces of land including the 10 foot strip and lot 14. Thereafter, the parties stipulated to the real property values as determined by Special Commissioner William C. Boyers.[5]

On 15 December 1995, the court entered its final order. The court made the following relevant findings: 1) Curtis gave Rice a one-half interest in lots 14 and 21 in exchange for moving the soil; 2) Rice and Curtis contributed lots 14 and 21 to the partnership; 3)the statute of frauds is inapplicable because this was a contribution of land, not a sale; 4) Curtis is estopped from relying on his interest in lot 14 as a tenant by the entirety to prevent the contribution; and 5) the value of Curtis' contribution of the ten foot strip was $5,000.00.

Curtis filed a motion to alter or amend the final judgement as to the finding that the value of the ten foot strip was $5,000.00 rather than $52,800.00 as stipulated by the parties. On 1 February 1996, the court denied the motion and stated as follows: "The Stipulations entered into by the parties prior to trial were

[4] At the time of the filing of the lawsuit, the unsold partnership property included lot 23 of The Hollows Section Two and the remaining, undeveloped Yearwood Property. In addition, lot 14 of The Hollows over which there is a dispute as to ownership had not been sold.

[5] Mr. Boyers valued lot 21 at 25,000.00, lot 14 at $26,900.00, and the ten foot strip at $52,800.00.

4

stipulations as to the amount of each partner's claim against the Partnership.  There was no stipulation as to the 'value' of the various contributions of each partner."

On 7 February 1996, Mrs. Curtis filed a motion to intervene to protect her interest in lot 14.  On 15 May 1996, the court entered its final order as to Mrs. Curtis.  The order estopped Mrs. Curtis from claiming any interest in lot 14.

On 21 February 1996, Curtis filed his notice of appeal.  Mrs. Curtis filed her notice on 29 February.  On 6 March 1996, the court entered an order granting a stay.  Appellants presented the following issues:

> 1.   Whether the Trial Court erred in finding that the Statute of Frauds is inapplicable to an oral agreement to contribute real estate to a partnership?
> 2.   Whether the Trial Court erred in finding that [appellants] are estopped to assert their ownership of land as tenants by the entirety as a defense to [Rice's] claim that [Curtis], only, orally transferred to [Rice] one-half ownership interest in such lands, and then [Rice and Curtis] orally transferred full ownership of such lands to [Cutis and Rice's] Partnership?
> 3.   If these lands so owned by [appellants] were somehow enforceably transferred as contributions to the Partnership, are [appellants] entitled to compensation from the Partnership for the value of such land?
> 4.   Whether the Trial Court erred in finding that [Curtis'] claim against the Curtis and Rice Partnership for the value of a ten-foot wide strip of land is $5,000, rather than $52,800 as stipulated by the parties?
> 5.   The trial court erred in ordering the sale of lot #14 at public auction for the reason Mrs. Curtis owns a right of survivorship in such property created by tenancy by the entireties.

I.      **ISSUES ONE, TWO, THREE, AND FIVE**

   A.   **STATUTE OF FRAUDS**

In finding that the transaction involved in the instant case

5

was not within the statute of frauds, the trial court stated as follows:

> The court finds the statute of frauds to be inapplicable in this case. The issue at bar is the oral agreement between Curtis and Rice to contribute certain real estate to accomplish the objective of the partnership. The statute of frauds relied upon by plaintiff applies to contracts "for the sale of lands, tenements, or hereditaments."

The trial court effectively held that the statute of frauds did not apply to either the first oral transaction where Curtis allegedly transferred a one-half interest in lots 14 and 21 to Rice or to the second alleged oral transaction of Curtis and Rice transferring ownership of lots 14 and 21 to the partnership.

The General Assembly enacted subsection (a)(4) of the Tennessee Statute of Frauds for the protection of Tennessee residents who owned real estate. *Irwin v. Dawson*, 197 Tenn. 314, 317, 273 S.W.2d 6, 7 (1954). Tennessee Code Annotated section 29-2-101 provides, in pertinent part, as follows:

> (a) No action shall be brought:
>     . . . .
>  (4) Upon any contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer term than one (1) year; or,
>  (5) Upon any agreement or contract which is not to be performed within the space of one (1) year from the making thereof;
> unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him thereunto lawfully authorized.

Tenn. Code Ann. § 29-2-101(a)(4) (Supp. 1996).

"The purpose of the statute of frauds 'is to reduce contracts to a certainty, in order to avoid perjury on the one hand and fraud on the other.'" *Baliles v. City Serv. Co.*, 578 S.W.2d 621, 623 (Tenn. 1979)(quoting *Price v. Tennessee Prod. & Chem. Corp.*, 53 Tenn. App. 624, 385 S.W.2d 301 (1964)). The

6

statute of frauds protects "owners of land from hasty or inconsiderate agreements concerning a valuable species of property, and [guards] against misunderstanding as to the nature and extent of such agreements." *Brandel v. Moore Mort. & Inv. Co.*, 774 S.W.2d 600, 604 (Tenn. App. 1989). The statute also "'ensures that transactions involving . . . realty interests are commemorated with sufficient solemnity . . . that the parties and the public can reasonably know when such a transaction occurs.'" *D & S Coal Co. v. USX Corp.*, 678 F.Supp. 1318, 1322 (E.D. Tenn. 1988)(quoting *Seale v. Citizens Sav. & Loan Ass'n,* 806 F.2d 99, 104 (6th Cir. 1986)).

The "party to be charged therewith" means the owner of the land. *Patterson v. Davis*, 28 Tenn. App. 571, 577, 192 S.W.2d 227, 229 (1945). The term "Sale" means alienation in its broadest sense and includes many types of land transfers. *Lambert v. Home Fed. Sav. & Loan Ass'n,* 481 S.W.2d 770, 773 (Tenn. 1972) (applying the statute to the creation of mortgages and deeds of trust); *Goodloe v. Goodloe*, 116 Tenn. 252, 254, 92 S.W. 767, 767 (1906) (applying the statute to devises of land); *Nunnelly v. Southern Iron Co.*, 94 Tenn. 397, 409-10, 29 S.W. 361, 365 (1895) (applying the statute to the creation of easements); *Perkins v. Cheairs*, 61 Tenn. 194, 202 (1872) (applying the statute to parol contracts to convey land in the future). The term includes a contract binding one to give or donate land. *Bailey v. Henry*, 125 Tenn. 390, 399, 143 S.W. 1124, 1127 (1912). "[W]here one goes into possession under a parol of donation he occupies the same relation in respect to his possession as a purchaser by parol." *Inman v. Tucker*, 138 Tenn. 512, 529, 198 S.W. 247, 251 (1917). In addition, oral agreements or contracts to enter into written agreements which are within the scope of the statute of frauds are also within the statute because to allow the enforcement of such an agreement would be tantamount to taking the

7

main contract out of the statute. ***White Motor Corp. v. Nashville White Trucks, Inc.***, 5 B.R. 112, 118 (Bankr. M.D. Tenn. 1980); ***see Patterson***, 192 S.W.2d at 229.

"In order to satisfy the statute of frauds, the entire agreement must be in writing. It cannot be partly in writing and partly in parol." ***Eslick v. Friedman***, 191 Tenn. 647, 655, 235 S.W.2d 808, 812 (1951). "'The memorandum required by the statute of frauds must show an existing and binding contract, as distinguished from mere negotiations, and must disclose the particular contract sought to be enforced rather than some other contract or promise.'" ***Black v. Black***, 185 Tenn. 23, 30, 202 S.W.2d 659, 662 (1947)(quoting 37 C.J.S. *Statute of Frauds* § 180(a)). The statute of frauds "is directed at the remedy and not the validity of the contract." ***Ashley v. Preston***, 162 Tenn. 540, 543, 39 S.W.2d 279, 279 (1931). Therefore, a parol contract for the sale or disposition of land is not void, but voidable. ***Cobble v. Langford,*** 190 Tenn. 385, 390, 230 S.W.2d 194, 196 (1950).

"'A writing is indispensably requisite, under the provisions of the Statute of Frauds whenever an estate or interest in land is to be affected, *unless the circumstances are such that a refusal to execute the agreement would operate as a fraud.*'" ***Bloomstein v. Clees Bros.***, 3 Tenn. Chan. 433, 442 (1877)(quoting 2 Am. Ld. Cas. 558). Strict application of the statute of frauds might, under proper circumstances, be mitigated by showing mistake, fraud, or equitable estoppel. The fraud which will take a case from within the operation of the statute is not fraud in making a promise with no intention of fulfilling it. Instead, it is fraud in which one party prevents the reduction of the agreement into a writing or when one party induces the other into believing that a writing was created. To explain, the party against whom the statute is

8

asserted must have intended that the agreement be put in writing, but due to the fraud of the other party this intention was not carried out. *Hackney v. Hackney*, 27 Tenn. 451, 455-58 (1847).

Part performance of a parol contract will not prevent the application of the statute of frauds although the doctrine of equitable estoppel has mitigated the harshness of this rule in cases where enforcement of "the statute of frauds would make it an instrument of hardship and oppression, verging on actual fraud." *Baliles*, 578 S.W.2d at 624; *accord GRW Enters., Inc. v. Davis*, 797 S.W.2d 606, 611 (Tenn. App. 1970).

We think it is clear that the statute of frauds applies to the first oral transaction and equally clear that the statute applies to the second transaction. The contribution of real estate to a partnership is no different than a sale because it clearly affects the title to the real estate. To construe such a transaction otherwise is to defeat rather than to carry out the purpose of the statute.

The trial court, without citing any case law or statutes, held that appellants were estopped to assert any defense to Rice's claims to lot 14, lot 21, and the ten-foot strip. We are of the opinion that the record does not support this conclusion with any showing of fraud, hardship, or oppression. The record is clear that Rice and Curtis never intended to put the alleged transfer to Rice or the alleged transfer to the partnership in writing. Instead, they knowingly relied on oral conveyances and agreements. Given the parties' intentions and actions, this court is of the opinion that if there were any fraud on the part of appellants it was not the type of fraud which would take the transaction out of the statute of frauds.

9

Moreover, the record does not show that the enforcement of the statute of frauds would make it an instrument of hardship and oppression. Regardless of any decision by this court to modify the trial court's order, Rice has reimbursed himself from partnership funds for all but $6,313.00 of his total expenditures. In addition, he received an additional $12,500.00 from the sale of lot 28 of The Hollows Section Two and will receive one-half of the profits realized from the sale of the remaining partnership property. In other words, Rice has already recouped all of his investment and made over $6,000.00 in profits.

Curtis has received $12,500.00 from the sale of lot 28 while incurring expenses totaling more than $26,000.00. If appellants are estopped from asserting their defenses, they would lose their ownership interest in lot 14 of The Hollows and any reimbursement for lot 14, lot 21, or the ten-foot strip.

As to distribution of partnership assets, this court is of the opinion that appellants should receive compensation for lot 21 of The Hollows. Lot 21 has been subsumed into the lots of The Hollows Section Two. The parties sold the lot prior to this action and used the proceeds to pay off The Hollows Two mortgage and/or to reimburse Rice for his partnership contribution. We are of the opinion that the partnership should pay the sum of $25,000.00 to appellants based on the stipulations of Rice and Curtis. As to lot 14, it appears it is still included within The Hollows. We are of the opinion that the lot is free of any enforceable claims by Rice or the partnership and that it is the property of appellants. Thus, it was error for the court to order the property sold at auction with the proceeds going to the partnership. The property shall remain that of appellants. The issues relating to the ten foot strip are addressed below.

10

### B.   TENANCY BY THE ENTIRETY

"A tenancy by the entireties is created when property is conveyed to a husband and wife, without more."  14 Tenn. Jur. *Husband and Wife* § 13 (1996); **accord Young v. Brown**, 136 Tenn. 184, 187, 188 S.W. 1149, 1150 (1916).  Under tenancy by the entirety, neither of the tenants may alienate any portion of the estate except his or her right of survivorship without the consent of the other.  Any attempt to do so without the consent of the other is void. **Robinson v. Trousdale,** 516 S.W.2d 626, 632 (Tenn. 1974). Here, it is undisputed that the land which comprised lot 14, lot 21, and the ten foot strip were conveyed to "Allen D. Curtis and wife, Carolyn June Curtis" and that appellants held the property as tenants by the entireties.

Therefore, even if Curtis made an enforceable conveyance to Rice of a one-half interest in lot 21 and a one-half interest in lot 14, the conveyance is void except as to Curtis' right of survivorship.  Given this, Rice never had a viable ownership interest in these lots to contribute to the partnership.  If any contribution of the property was made to the partnership, it was made by appellants only and only they have a claim against the partnership for compensation.  Nevertheless, it is the opinion of this court that Curtis did not make an enforceable conveyance to Rice because there was no writing and because Rice failed to establish that the statute of frauds should not apply.

### II.   WHETHER THE TRIAL COURT AWARDED THE PROPER AMOUNT OF DAMAGES FOR THE TEN-FOOT STRIP.

Curtis contends that the only issues before the trial court involved the allowance of claims submitted by Curtis and Rice against the partnership.  Curtis and Rice stipulated to the amount

of the claims in writing. Except for Curtis' claim to the ten-foot strip, the trial court when awarding damages either allowed the claim and awarded an amount equal to the stipulated value or disallowed the claim entirely.

"Stipulations are binding on the parties as well as the court. A party cannot assert a position contrary to that which he has stipulated." *Rutherford Builders, et al v. Security Federal Savings & Loan*, No. 87-114-II, 1987 WL 18958, at * 5 (Tenn. App. at Nashville October 28, 1987). Here, the language of the stipulations is clear and unambiguous. Section three states: "The real property values determined by Special Commissioner William C. Boyers . . . are stipulated and agreed to by the parties." The appraisal assigned a total value of $52,800.00 to the ten foot strip, and the stipulations listed $52,800.00 as the "[v]alue of 10-foot [s]trip."[6] The transcript reveals that there was no confusion by the court, Rice's attorney, or Rice regarding the binding effect of the stipulations as to the valuation of the property. For example, Rice's attorney stated: "Your Honor, the value of the ten-foot strip and lot 21 has been stipulated. If counsel is trying to inquire as to what the value of that is, it's been stipulated."

Although the trial court could have decided that the partnership should not compensate Curtis for the ten foot strip, once it determined that it should allow the claim the court should have awarded damages equal to the stipulated value of $52,800.00. We are of the opinion that the trial court made a finding that was inconsistent with the stipulations which were binding on the parties and the court. In addition, Mrs. Curtis is entitled to

---

[6] Mr. Boyers actually assigned two values to the property. First, he assigned a nominal value of $5,000.00 to the property. Next, he considered the development costs for the roads and water lines along the ten foot strip. Based on this, he concluded that the development costs equaled $47,816.00. After adding together both values and rounding off the numbers, Mr. Boyers concluded that the ten foot strip had a total value of $52,800.00.

one-half of the compensation from the partnership because she owned a one-half interest in the property.  Thus, the trial court should have awarded Curtis $26,400.00 and Mrs. Curtis $26,400.00.

## III.    CONCLUSIONS

Therefore, it results that the statute of frauds is a defense to the enforcement of any of the alleged oral transfers of lot 14, lot 21, or the ten foot strip of The Hollows.  Appellants are not estopped from asserting their interests as tenants by the entireties as a defense to Rice's claims.  Appellants are entitled to reimbursement by the partnership for the $25,000.00 value of lot 21 and for the $52,800.00 value of the ten foot strip.  Ownership of lot 14 has not been transferred to the partnership and remains in appellants.

The judgment of the trial court is reversed, and the cause is remanded to the trial court with orders to enter judgment consistent with this opinion and for any further necessary proceedings.  Costs on appeal are assessed to defendants/ appellees, William M. Rice and Rice & Papuchis Construction Company, Inc.

_____
SAMUEL L. LEWIS, JUDGE

CONCUR:

_____
HENRY F. TODD, P.J., M.S.

_____
WILLIAM C. KOCH, JR., JUDGE

13

IN THE COURT OF APPEALS OF TENNESSEE

MIDDLE SECTION

AT NASHVILLE

**FILED**

**August 1, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

|  |  |  |
|---|---|---|
| ALLEN D. CURTIS and wife, | ) | |
| CAROLYN JUNE CURTIS, | ) | |
|  | ) | |
| Plaintiff/Appellants, | ) | Appeal No. |
|  | ) | 01-A-01-9605-CH-00211 |
| v. | ) | |
|  | ) | Sumner Chancery |
| WILLIAM M. RICE, and | ) | No. 94C-324 |
| RICE & PAPUCHIS CONSTRUCTION | ) | |
| COMPANY, INC., | ) | |
|  | ) | |
| Defendants/Appellees. | ) | |

# O R D E R

Defendants have filed a most respectful petition for rehearing of this court's opinion which the court has considered and finds to be without merit. Each of the matters discussed in the petition for rehearing were considered in the original opinion and found to be without merit.

It is therefore ordered that the petition for rehearing be and the same is overruled with costs to the defendants.

Enter this _____ day of August, 1997.

_____
HENRY F. TODD, PRESIDING JUDGE, M.S.

_____
SAMUEL L. LEWIS, JUDGE

_____
WILLIAM C. KOCH, JR., JUDGE