**Joe YARBROUGH, Plaintiff-Appellee,**

v.

**James L. STILES, et al.,
Defendants-Appellants.**

Court of Appeals of Tennessee,
Eastern Section.

July 3, 1986.

Permission to Appeal Denied by
Supreme Court Sept. 29, 1986.

Steven E. Marshall, Sevierville, for plaintiff-appellee.

## OPINION

FRANKS, Judge.

Judgment for damages for the breach of contract for the sale of real estate in the amount of $105,000.00 was entered by the trial judge. Defendants have appealed.

The parties executed an agreement in May, 1984, wherein plaintiff granted defendants an option to purchase a parcel of property in Sevier County at a stated price of $245,000.00. The agreement required defendants to tender $5,000.00 as an earnest money deposit, to be held in escrow and applied toward the purchase price.

The agreement provides in the section captioned "CLOSING SCHEDULE":

HSL agrees to close once the Limited Partnership formed to purchase the land and improvements described herein has in escrow sufficient funds to complete the purchase of the land and improvements described herein and the land and improvements on the adjacent property, and appropriate bank financing is approved.

The agreement was signed by plaintiff as owner [1] and defendants, Hamilton, Stiles and Lane.

Following presentation of evidence by the parties, the trial judge determined the "option was exercised by the actions, conduct, and statements of the defendants upon which Mr. Yarbrough relied and liquidated the assets located at the property subject this suit." He further held the conditions precedent of the agreement had been satisfied and awarded damages.

■ First, defendants contend the judgment must be reversed because the real party in interest, Chalet Mountain Market, Inc., was not a party to the suit. Rule 17.01 of the Tennessee Rules of Civil Procedure requires "[e]very action shall be

Frank Holloman, Memphis, for defendants-appellants.

---

1. Plaintiff signed the agreement thusly:
   Chalet Mountain Market Inc.
   /s/ Joseph W. Yarbrough

   By: Joseph W. Yarbrough
   Owner.

prosecuted in the name of the real party in interest...." Defendants argue the corporation is the real party in interest and the judgment below should be reversed because suit was not brought in the corporation's name. However, "[w]here the defect of parties is not apparent on the face of the petition, and is not taken advantage of by ... preliminary pleading, it is waived." *Brady v. Correll et al.*, 20 Tenn.App. 224, 229, 97 S.W.2d 448 (1936). This principle is also observed under the federal rule: "An objection that plaintiff is not the real party in interest must be made with reasonable promptness and may be waived by delay." 35A C.J.S., *Federal Civil Procedure*, § 53.

Defendants raise no objection concerning the absence of the real party in interest in their pleadings nor did they raise any formal objection at trial, although defendants' counsel stated in his closing argument that plaintiff "sued individually, and the corporation's not a party." Defendants waived the real party in interest objection by failing to raise the issue in their pleadings or properly at any stage of the trial.

■ Defendants argue the option was invalid for lack of consideration because the $5,000.00 earnest money was never paid; however, "[t]he fact that the consideration named in the option contract has not been paid does not necessarily defeat the contract or render it less enforceable." 91 C.J.S., *Vendor and Purchaser*, § 7c.

■ Defendants further argue that the option never ripened into a contract because it was never exercised but if exercised was invalidated by their failure to satisfy the condition precedent, *viz.*, financing was never secured. The agreement specified neither time nor mode of acceptance and, under the circumstances, ordinary contract rules of acceptance apply. The general rule is that "[t]he acceptance ... of ... an offer [to buy or sell] may be communicated by the other party either by a formal acceptance, or acts amounting to an acceptance." *Cole-McIntyre-Norfleet Co. v. Holloway*, 141 Tenn. 679, 683, 214 S.W. 817 (1919).

The evidence does not preponderate against the trial judge's determination that defendants had manifested their exercise of the option by their "actions, conduct, and statements." T.R.A.P., Rule 13(d). Although plaintiff admitted defendants never formally notified him of acceptance, he testified defendants told him "many, many times" that they planned to consummate the purchase. He further testified defendants told him "the closing was coming out in one day....", and on that basis he sold his equipment and closed the business.

■ Defendants contend their failure to obtain financing defeated the condition precedent of the agreement that "appropriate bank financing" be obtained. Again, the evidence preponderates in favor of the trial judge's finding on this issue. Defendants received a letter from First Tennessee Bank, dated September 28, 1984, wherein the bank committed "to lend to Ski Mountain Shopping Center, Ltd., a Tennessee limited partnership ... $650,000.00 for the purpose of constructing and equipping a shopping center consisting of approximately 4,000 square feet to be located on Ski Mountain Road in Gatlinburg, Tennessee." The loan was conditioned upon defendants obtaining, prior to the closing of the loan, "the sale to the investors of 30 units ..." or, failing that requirement, "a Letter of Credit in an amount which equals the difference between the pre-sale requirement amount and the total amount of Units actually sold prior to the closing of the loan." Jim Stiles, one of the partners in Ski Mountain Shopping Center, testified that First Tennessee Bank ultimately declined the loan because of "the survey and the appraisal and certain things they just didn't feel comfortable with."

In finding that financing had at some point been approved, the trial judge emphasized testimony by Tommy Lambert, an officer at First National Bank in Gatlinburg, that a First Tennessee loan officer called him "and wanted to know our routing number to wire the money to us through the Federal Reserve System...."

When the funds were not wired, Lambert spoke with Stiles and Lane, who informed him that "there wasn't no [sic] problem; they were going to get it worked out; we were still going to get the money." The commitment letter was finally rescinded "by mutual agreement" on November 8, 1984, in a paragraph added to the commitment letter and signed by the First Tennessee loan officer.

The evidence establishes that First Tennessee Bank stood ready and willing to finance this purchase subject to certain reasonable conditions that defendants refused to fulfill; moreover, instead of renewing good faith[2] efforts to secure financing, defendants purchased a nearby parcel of property.

The remaining issue is whether the trial court's award of damages was proper. The rule in this jurisdiction is the "proper measure of damages available to a vendor as against a breaching vendee in a real estate transaction is that the vendor is entitled to the difference between the contract price and the fair market value of the property at the time of the breach." *Turner v. Benson*, 672 S.W.2d 752, 754 (Tenn.1984). The contract price of the property in the instant case was $245,000.00. Expert testimony established the market value at $140,000.00. Since there was no countervailing evidence of market value, the trial court's award is proper and we affirm.

The cause is remanded to the trial court and the costs incurred on appeal are assessed to appellants.

PARROTT, P.J., and GODDARD, J., concur.

---

2. A contract for the sale of property contingent upon finances imposes upon the purchaser a duty to exercise reasonable good faith efforts to obtain such financing. *See* Annot., 78 A.L.R.3d 880, § 2(a), (1977).