David MASSEY, Individually, and John Craig, Individually, and Massey–Craig Motors, Inc., Plaintiffs–Appellees,

v.

Loy G. HARDCASTLE, Jr., and Robert E. Bond and Gilford Thornton and Ed Bond Motors, Inc., Defendants–Appellants.

Court of Appeals of Tennessee, Middle Section, at Nashville.

March 9, 1988.

Petition to Rehear Denied by Supreme Court May 23, 1988.

**128**

Jerry Wallace, Pulaski, Lee England, Lawrenceburg, for plaintiffs-appellees.

W.C. Keaton, Keaton, Turner & Spitzer, Hohenwald, for defendants-appellants.

## OPINION

TODD, Presiding Judge.

This is a suit for damages for breach of a sales contract. The Trial Court, sitting without a jury, awarded plaintiffs $228,725 damages, and defendants have appealed.

David Massey, John Craig and Massey-Craig Motors, Inc., sued Loy G. Hardcastle, Jr., Robert E. Bond, Gilford Thornton and Ed Bond Motors, Inc., for breach of contract. The Trial Court rendered judgment in favor of the plaintiffs and against Loy G. Hardcastle, Jr., Robert E. Bond and Gilford Thornton, and dismissed plaintiffs' suit against Ed Bond Motors, Inc. The counterclaim of the defendants was dismissed.

Appellants have presented fourteen issues for review, of which the first four assert the statute of frauds.

David Massey and John Craig were the only stockholders in Massey-Craig Motors, Inc., a franchised Chrysler, Dodge, Plymouth automobile dealer at Lawrenceburg, Tennessee. Part of the real estate used by the corporation was owned by the stockholders and rented to the corporation. Other land used by the corporation was leased from others.

On January 8, 1986, using a form furnished by Chrysler, Mr. Estep, a representative of Chrysler Credit Corporation, caused Massey-Craig Motors, Inc., to write a letter to Chrysler Corporation stating:

> Please take notice that the undersigned elects to terminate and does hereby terminate in accordance with the terms thereof, effective thirty (30) days from delivery hereof to you, any and all agreements that the undersigned has at any time entered into with you, relating to the purchase and sale of Chrysler Corporation motor vehicles, if and to the extent now in effect, including, without prejudice to the generality thereof, a certain Massey-Craig Motors, Inc. Direct Dealer Agreement currently in effect between you and the undersigned.

Said letter bears the signatures of the plaintiffs Massey and Craig. Mr. Estep sent a copy of the letter to Chrysler Credit Corporation, but the original of the letter was not mailed to Chrysler Corp. until several weeks later. On the same date, (Jan. 8, 1986), Chrysler Credit cancelled the line of credit of Massey-Craig Motors, Inc., and Mr. Estep notified Chrysler Corp. offices of the cancellation, thereby preventing further shipments of vehicles to Massey-Craig Motors, Inc.

From October, 1985 to January 1986, defendant Gil Thornton, discussed with John Craig the purchase of Massey-Craig Motors, Inc.

On January 24, 1986, defendants, Bond, Thornton and Hardcastle, met with plaintiffs Massey and Craig and the Chrysler representative, Estep. At this meeting was produced the document upon which this suit is based. It is composed of two sheets of paper, one yellow and one white. On the face of the yellow sheet, defendant, Mr. Hardcastle, wrote the following:

1-24-86—4:35 p.m. 1986

Massey–Craig Mtrs.

2122 N. Locust Ave.

Lawrenceburg, TN

Buy-sell agreement between Massey–Craig (seller) and Bond Motors Inc. (buyer):

Buyer agrees to purchase assets of seller as follows:

A. Purchase new car inventory at Chrysler invoice.

B. Purchase Chrysler parts at book value.

C. Purchase additional random parts at $7,000.*

D. Seller agrees to transfer all rights to its' franchise with C–P–D to buyer.

At the close of this purchase, the seller will transfer its tenantcy to the buyer for occupancy and use of premises for ongoing business activities of the buyer.

s/ G. Thornton

* Exceptions

On the reverse side of the yellow sheet, Massey wrote the following:

1. Junk in back and salvage vhs

2. Trk Bodies & wood storage Blgs in rear and whats inside.

3. Personal items.

4. Boltons computer

5. Big typewriter

Following the above quoted matter, Mr. Hardcastle wrote the following:

10% Deposit

---

* If transaction of real estate continues for through Feb., Bond Mtrs. would pay Massey–Craig approx. $5,700.

480,000

40,000   check

440,000   ASAP

Thereafter, appear the following signatures:

Loy G. Hardcastle

Robert E. Bond

David Massey

John W. Craig

witness: W.H. Estep

The white sheet of paper contains the following:

1. Junk and salvage veh's in rear of bldg.

2. Trk bodies and wood Bldg. & contents.

3. Personal items.

4. Sharp Financial Computer

5. Royal 410 typewriter.

6. M–C office supplies in small bldg.—6 offices.

7. Small safe.

8. Cash & deals in process.

Mr. Massey describes this information as:

just another list of exceptions, the things that Craig–Massey was to keep.

On the same date, January 24, 1986, Mr. Hardcastle gave Massey–Craig Motors, Inc., a check for $40,000.00 for "escrow deposit on dealership until all the details of the buy-sell was actually consummated and the corporation and Chrysler Credit had approved the franchise and the line of credit." It was clearly understood that this check was purely symbolic, for there were no funds on deposit out of which it might be honored.

At the time of the signing of the agreement on January 24, 1986, the defendants were unaware of the letter terminating the franchise, the existence of a lien for $16,000 delinquent state sales taxes, or $16,000 delinquent interest on floor plan security installments covering new cars on hand.

On the night of January 24, 1986, defendants learned of the two $16,000 liens, and the parties met and discussed the sales tax lien and the indebtedness to Chrysler of $16,000. Mr. Thornton reduced the amount of defendants' offer to $408,000, but no agreement was reached.

Plaintiffs were quite upset that defendants should arbitrarily attempt to reduce the sales price from $480,000 to $408,000, but it appears that plaintiffs misunderstood the significance of the reduction. It appears from the document quoted above that the intended sale price of $480,000 was to be reduced to $440,000 by the ultimate cashing of the $40,000 check. When plaintiffs requested "up-front money" of $32,000 to satisfy the two $16,000 claims, defendants conceived that the advancement of such a sum would further reduce the net sales price from $440,000 to $408,000. Nevertheless, because of the misunderstanding or disagreement, the $32,000 "up-front money" was never advanced by defendants.

On the following day, January 25, 1986, plaintiffs informed Mr. Thornton that the interest and sales tax had been taken care of. At that time, said debts had not been satisfied.

On the same date, January 25, 1986, defendants assumed control of the premises of Massey–Craig Motors, Inc., under the name Bond Motor Company and continued to engage in business on said premises until February 18, 1986, at which time defendants abandoned said premises.

On March 6, 1986, Bond Motors, Inc., wrote to plaintiffs as follows:

March 6, 1986
Mr. David Massey
Mr. John Craig
c/o Massey–Craig Motors, Inc.
N. Locust
Lawrenceburg, TN
Gentlemen:
Since our request for evidence has not been received that your obligation to the Tennessee Department of Revenue for the December Sales Tax has been met along with other problems with the Dealership, we wish to break off our tentative negotiations for the assets discussed from Massey–Craig Motors, Inc.
Sincerely,
/s/ Loy G. Hardcastle, Jr., Sec.
Loy G. Hardcastle, Jr., Sec.
Bond Motors, Inc.

Thereafter, Bond Motors, Inc., received evidence that the sales tax was paid on February 12, 1986.

On March 14, 1986, the captioned plaintiffs sued the captioned defendants alleging in Count 1:

At all times mentioned herein the plaintiffs owned and still own in fee simple absolute certain property situated in Lawrence County, Tennessee, and more particularly described as follows:

(describing by metes and bounds)

By written contract dated the 24th day of January, 1986, the plaintiffs agreed to sell to the defendants and the defendants agreed to buy from the plaintiffs the above described real property for and in the sum of Four Hundred and Eighty Thousand Dollars, ($480,000.00), and included in this conveyance was the majority of the business belonging to the plaintiffs. A copy of the written agreement entered into by the parties is attached hereto and marked Exhibit No. 1, and by reference made a part hereof.

That the consideration for the execution of said contract was a check for the sum of Forty Thousand Dollars, ($40,000.00) which check cannot be negotiated for Insufficient Funds, a copy of which is attached hereto, marked Exhibit No. 2, and by reference made a part hereof.

As previously described, the contemplated sale between these parties was not only of the real estate but of the Chrysler Dealership located at the plaintiffs' place of business in Lawrenceburg, Tennessee, the sale included the new car inventory, the parts and the plaintiffs' franchise to their Chrysler Dealership. In furtherance of this agreement, the defendant and/or their agents and servants took possession of the plaintiffs' place of business on the 25th day of January, 1986, began to operate the business of a new car dealership and particularly, a Chrysler Dealership, on the plaintiffs' premises. The plaintiffs through the month of February, 1986, made repeated efforts to close and consummate the original agreement between these parties and the defendants have continu-

ously refused to proceed any further with the closing of the agreement with the payment of the purchase price and have intentionally repudiated the contract.

At all times herein mentioned, the plaintiffs have been ready, willing and able to perform the contract by conveying to the defendants good title to said property.

On February 18, 1986, the defendants abandoned the premises and intentionally closed an ongoing business which intentional closing severely damaged the plaintiffs.

Count I prays:

That the Court enter judgment in favor of the plaintiffs compelling the defendants to perform said contract by paying to the plaintiffs the sum of Four Hundred and Eighty Thousand Dollars, ($480,000), the purchase price of said real property with interest thereon at the legal and lawful rate of interest prescribed in the State of Tennessee for prejudgment.

Count II of the complaint states:

The defendants in furtherance of said contract took possession of the plaintiffs' premises on January 25, 1986, and remained in possession of said premises until February 18, 1986. By reason of the result of that possession, the plaintiffs have suffered incidental damages for the intentional and unwarranted repudiation of the original contract and those incidental damages include an accounting for inventory owned by the plaintiffs that were sold by the defendants and their agents, for rent, for utilities including electric, water and telephone and accounting to the plaintiffs for motor vehicles owned by the plaintiffs that were sold by the defendants and/or their servants and agents, and in addition, the plaintiffs had on hand a new car inventory with an outstanding balance due to Chrysler Credit Corporation, which new car inventory stood as security for that creditor's floor plan, the amount due of Three Hundred and Thirty One Thousand, Eight Hundred and

Sixty Seven Dollars and Forty Two Cents, ($331,867.42), the plaintiffs have been forced to sale that inventory for Three Hundred and Twenty Thousand, Nine Hundred and Forty Five Dollars and Thirty Five Cents, ($320,945.35), or at a discount of Ten Thousand, Nine Hundred and Twenty Two Dollars and Seven Cents, ($10,922.07).

PREMISES CONSIDERED, THE PLAINTIFFS PRAY:

1. The Court enter judgment against the defendants for and in the sum of Fifty Thousand Dollars, ($50,000.00), as compensatory damages in this cause.

Count III alleges willful misconduct and prays for judgment for $500,000.

The answer of defendants state:

It is admitted by the defendants that a written "buy-sell agreement" was entered into by the plaintiffs and the defendants on or about the 24th day of January, 1986. It is denied that the majority of the consideration for the sale was in order to buy the real property described above. The sale was to include the business of the plaintiffs as well as the interest in the franchise with Chrysler Credit Corporation, and other considerations then believed to be owned by plaintiffs and inventory then believed by defendants to be owned by plaintiffs because of plaintiffs averments to that effect.

. . . .

. . . the plaintiffs through the month of February, 1986, made repeated efforts to close and consummate the original agreement between the parties, but would state in the contrary that the plaintiffs continued to attempt to renegotiate the contract entered into by them after discovery by the defendants that they did not, in actuality, own the majority of the dealership which they were attempting to sell to the defendants.

. . . .

Defendant would not (sic) adopt as affirmative defenses that the plaintiffs attempted to fraudulently induce the defendants to purchase the property which plaintiffs did not own. Further, at the

time of the agreement, it was impossible for the plaintiffs to perform the contract and remained impossible for them to perform the contract throughout the period of time alleged in the complaint. Further, the complaint fails to state a claim upon which relief can be granted.

By cross claim defendants alleged:

That at the time of the agreement between the parties the plaintiffs did not hold the interest which they claimed to hold in the dealership in Lawrenceburg, Lawrence County, Tennessee and attempted to fraudulently induce the defendants to enter into a purchase agreement with them for an exorbitant price for what the plaintiffs did not, in actuality, hold title.

That upon the discovery of the facts alleged in paragraph II, above, the plaintiffs attempted to renegotiate the agreement between the parties with defendants and, in order to, pay off certain debts which were the cause of the lack of good title to the property attempted to be conveyed, requested additional capital be advanced prior to the closing of any sale.

Because of the fraud of plaintiffs, defendants/counterplaintiffs were forced to run at their own expense the dealership in Lawrenceburg, Lawrence County, Tennessee and because of said attempt were caused the loss of money, time and property in the amount of $10,000.00

Without record permission of the Trial Court, on June 13, 1986, plaintiffs filed an amended complaint identical to Count I of the original complaint and omitting Count II.

On April 10, 1987, without record permission of the Trial Court, defendants filed an amended answer containing the following:

6. ....

They further admit that in order for the dealership to continue its operations, Bond Motors, Inc., took over the management of same in January of 1986. Bond Motors, Inc., managed the operations of the business for a period of days and until defendants became aware of certain facts relative to liens and encumbrances that existed on the business and the fact that plaintiffs had executed a termination letter of their dealership with Chrysler Corporation.

They deny that they refused to negotiate toward resolving the aforementioned problems that had come to the attention of the defendants. They admit that they refused to proceed any further with negotiations when it came apparent that the problems could not be solved on a reasonable basis.

7. They admit Bond Motors, Inc., ceased to manage the business on or about February 18, 1986, and did leave the premises. They deny the remaining allegations of Paragraph VII of the amended complaint.

8. Defendants deny that plaintiffs, David Massey and John Craig, have been legally authorized to institute this action on behalf of Massey–Craig Motors, Inc. (T.R.C.P., Rule 9.01)

....

10. Defendants deny that they took exclusive possession of the premises; rather they shared possession with plaintiff....

Defendants plead the following affirmative defenses:

a. It was impossible for the plaintiffs to carry out the terms of the alleged contract because its rights to its franchise with Chrysler–Plymouth Dodge had been terminated by plaintiffs on January 8, 1986, and all the other items of property were encumbered so that it could not sell and deliver unencumbered title of these items to Ed Bond Motors, Inc.

b. The alleged contract was, as shown by plaintiffs' Exhibit No. 1, to be a contract with Massey–Craig Motors, Inc. as seller. Therefore, the complaint fails to state a claim upon which any relief can be granted to the plaintiffs, David Massey and John Craig.

c. There was no meeting of the minds of the parties to the alleged contract. Plaintiffs continued to try to negotiate an agreement, but wanted to modify their original proposition by asking for front-end money, etc. so that no agreement was ever reached.

d.   The paper writing was incomplete as is clearly shown by reference to the allegations of the amended complaint. Most of the items alleged in the complaint are not in the paper writing.

e.   The alleged contract is so ambiguous and uncertain that it cannot be reasonably construed.

f.   The intentions of the parties to the alleged cannot be ascertained from an examination within the alleged contract's four corners.

g.   The plaintiffs breached the terms of the alleged contract in that the title to the goods involved in the transaction was not good. The goods were subject to a tax lien of the State of Tennessee. There was a lien in favor of Chrysler Credit. There was a deed of trust on the real estate which was outstanding to secure an indebtedness due Commerce Union Bank. Most, if not all of these liens and indebtednesses were unknown to the defendants. The foregoing constituted a breach of the implied warranty as is set out and stated in T.C.A. § 42–2–312, 725.

h.   Therefore, plaintiffs could not deliver good title to the alleged purchaser of the items alleged to be a part of the contract free from any security interest or other lien or encumbrance of which the alleged purchaser had no knowledge at the time the paper writing was executed. (T.C.A. 47–2–312)

i.   The alleged contract was for the sale of goods of a value in excess of $500— and there being no sufficient writing same was unenforceable by reason of the statute of frauds. (T.C.A. 47–2–201)

j.   The alleged contract was for the sale of personal property in an amount or value in excess of $5,000—and the subject matter not being reasonably identified, the alleged contract was unenforceable by reason of the statute of frauds. (T.C.A. 47–1–206)

k.   As the alleged contract included the sale of land and same did not include a sufficient description of the land, this action is barred by the statute of frauds. (T.C.A. 29–2–101(4)).

l.   As the alleged contract was not signed by the party to be charged Ed Bond Motors, Inc., or some other person by it thereunto lawfully authorized this action is barred by the statute of frauds.. (T.C.A. 29–2–101(5)).

The Trial Court filed no finding of facts or memorandum opinion. However, the Trial Judge stated orally from the bench:

The Court:  ... I have determined that this particular instrument that was the basis of this lawsuit, as meager as it is, I feel like that it's adequate to take this matter out of the Statute of Frauds. That being the case with the real estate, the $5000.00 personal property and the $500.00 property, the Statutes that refer to those amounts.

Now, we've got to bear in mind, I think, that in this particular situation, we had 3 men, there are 3 defendants in this case, and they've all been in the automobile business for some length of time, I believe Mr. Bond stated that he never had been a dealer, but had been in the business for quite some length of time, and Mr. Thornton has interest in three different Chrysler–Dodge–Plymouth businesses, and Mr. Hardcastle, as I understand it, is a dealer, and this contract, the main part, was written by Mr. Hardcastle, and I think Mr. Thornton more or less dictated it, and in that the contract refers to the address of the property, it refers to the real estate, in that it states that if transaction of real estate continued for through February, Bond would pay Massey–Craig approximately $5700.00  So I think, reading the entire paper writing, that it could be concluded, or I've concluded, that the proof is adequate to show that it was the intention of the parties for Massey–Craig to sell this as a going business, the real estate, inventory, parts, equipment and the whole thing for the sum of $480,000.00

Now, I think, too, this matter of equitable estoppel has been argued, even though I'm finding that this paper writing is sufficient, I'm finding also that this would be a matter of equitable estoppel for these reasons: The plaintiffs in this case were in the process, and had

been for some time, of going out of business. They had sold various cars to dealers and they had even contacted part of the defendants in this case, to sell cars that they had on hand, and they were in the process of going out of business, and they had this discussion with, I believe, Mr. Thornton, a few days before January 24, of '86, and on that day, that is, January 24, 1986, when Mr. Thornton, Mr. Hardcastle and Mr. Bond were all here, and they discussed this matter, I gathered from the proof at that time that Mr. Massey and Mr. Craig had figured out a way, with the sale of this property, to get out of this business, deliver clear title to the Thornton–Hardcastle–Bond people, and whatever they couldn't pay off, just make some arrangements, I think this is evidenced from the fact that some few days after this, they paid the sales tax. They asked to use part of this $40,000.00, that wouldn't work, so they made arrangements for that. The testimony of Mr. Eastep (sic) showed that they had made arrangements in such a manner with the Chrysler Credit Corporation, that by using their used cars, which they were going to keep, and they were clear with Chrysler, that was my understanding of the proof. So I feel like, and I'm satisfied from the proof, that they had made arrangements with this particular contract to not get completely out of debt, but in order to be able to get rid of this business and go on about their business in such a manner so that they could handle it. When this agreement was entered into on the 24th, I believe the proof showed that it was the very next day, that the defendants, and by "defendants" I'm referring to Mr. Bond, Mr. Hardcastle and Mr. Thornton, all three of them had signed this agreement, and whatever their other agreement might have been among themselves, I don't think they're material to this matter, but nevertheless, they began to operate, I believe, the very next day, as Bond Motors, Inc., there was not, in fact, a Bond Motors, Inc., they did not apply for a Charter until some few days after that, but they began to do business

as Bond Motors, Inc., advertised in the paper, put the sign up in front of the building, and did some business. This went on for a period of some 25 days. Then the original agreement of $480,000.00 broke down, and probably it was just a mistake of judgment, I don't feel like that under these circumstances with the defendants being in the Chrysler–Plymouth–Dodge business, and being familiar with franchises, I don't feel like that they could have just arbitrarily said, "Well, now, you can't give us a clear title, so we're not going to do this". From what I've heard, I feel like that, as I've said, that the plaintiffs had the matter worked out in such a manner as to deliver what they had contracted to deliver, to the defendants, free and clear of any encumbrances against the property, just like the some $75–or–$85,000.00 that's been testified about here, I feel like that that would not have been a lien against this property, and that other matters, with their used car business, could have been handled in such a manner so as to have delivered this particular property to the defendants free and clear of any encumbrances.

These folks were right in the middle of liquidating at this period, but by entering into this agreement, by so-called Bond Motors moving right in and starting to advertise, it put them in a little peculiar position, or you might say a big peculiar position, as far as trying to go on with what they had been doing, in other words, they now had it liquidated, closed out, with the agreement that they had with the defendants, they didn't do anything else, as far as trying to sell cars or anything else to get this matter, they had it done. But after the some 25 days, the defendants walked off from this business, took their—I guess what cars they brought down from their other dealerships, and there the plaintiffs were left.

I feel, for that reason, that equitable estoppel would apply in this case, so then we come down to the matter of damages, and we've only heard from the plaintiffs, really, as far as damages are concerned, and I feel that in this particular situation,

the amount of damages should be the— first take the contract price of $480,-000.00, take away the amount that the land and the portable building brought, $224,500.00, take away the $15,000.00 that they obtained from the parts and the equipment....

I do feel like, under the circumstances, where the defendants moved in, moved other vehicles in, actually used the plaintiffs' valuable piece of property for this period of time, that they should pay at least the rent that this corporation was paying to the plaintiffs, I'm going to set the rent at $6000.00, $3000.00 for a 2-months period. They used it a month, there's nothing in the record to indicate that they said anything to anybody when they picked up and left, I think $6000.00 would be proper for that.

....

I was doing, Mr. England, I was taking $480,000.00 and I was taking away the $244,500.00 taking away the $15,000.00; and then I was adding the $6000.00 for two months' rent and the wholesale interest charges for those 25 days, that the defendants had possession of these automobiles and the premises.

The final judgment reads in pertinent part as follows:

The Court upon the pleadings in this cause, the entire record, the examination of witnesses in open Court, and Exhibits to their testimony, finds the issues in this case in favor of the plaintiffs and against the defendants, and therefore, accordingly,

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED, and the plaintiffs are here and now awarded as compensatory damages the sum of Two Hundred and Twenty Thousand, Five Hundred Dollars, ($220,500.00).

IT IS FURTHER ORDERED ADJUDGED AND DECREED, and the plaintiffs are awarded as incidental special damages, the sum of Six Thousand Dollars, ($6,000.00), and Twenty Seven Hundred and Twenty Five Dollars, ($2,725.00).

IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that the counter-complaint in this cause, filed by the defendants, is dismissed, this judgment is against Loy G. Hardcastle, Jr., Robert E. Bond and Gilford Thornton, jointly and severally.

■ All of the captioned defendants appealed. They have presented fourteen issues, of which the first is:

1. Whether this action is barred by the statute of frauds (T.C.A. § 29–2–101(4)) because the paperwriting contains no description of the real estate to be sold.

T.C.A. § 29–2–101(4) provides in pertinent part as follows:

No action shall be brought: ... upon any contact for the sale of lands ... unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him thereunto lawfully authorized.

Plaintiffs insist that the principal property involved in the agreement sued upon was a tract of real estate described in the complaint. In order to be enforceable, the contract must conform to § 29–2–101(4).

Plaintiffs assert first that the real estate is described in the contract as "2122 N. Locust Ave., Lawrenceburg, Tennessee", which, it is alleged, is sufficient. This Court does not agree. If the document can be said to have any identifiable form, the first page thereof appears to be in the form of a letter addressed to "Massey–Craig Mtrs" at the address, "2122 N. Locust Ave., Lawrenceburg, Tn". The mailing address, or actual address of one of the parties is not a designation of the description of real estate to be bought or sold. This is especially true in the present case, where, on the face of the instrument, the words, your land, land, or real estate do not occur. The nearest so such a designation are "tenancy" coupled with the word "premises."

If the reverse side of the instrument should be regarded as part and parcel of the front side, the only reference to real

estate is "If the transaction of real estate continues ...."

This Court is of the opinion that the document does not conform to the requirements of § 29-2-101(4) for an enforceable contract for sale of realty.

In *Rogers v. Roop*, 19 Tenn.App. 579, 92 S.W.2d 423 (1936), there was a deed which described the property as

the lot, a parcel of ground, situated in Knoxville, Tennessee, known and described under house Nos. 1209 and 1211, Western Avenue. 19 Tenn.App. at 581 [92 S.W.2d 423].

This Court held that a description by street and number stating the city in which located is sufficient to satisfy the statute of frauds.

The present document does not purport to describe real estate, indeed, its references to real estate are vague in the extreme. There is a reference to "transfer its tenancy ... for occupancy and use of premises", and "transaction of real estate". This more nearly resembles an assignment of a lease than a sale; and this conforms to the facts of the case, ownership by Massey and Craig and tenancy by the corporation.

In *Brown v. Mays*, 34 Tenn.App. 632, 241 S.W.2d 871 (1951), there was a suit upon notes given for rent under a lease. One of the defenses was that the lease was invalid, thereby preventing a valid consideration. The lease described the property as:

located in the city of Nashville, or suburbs, and fronting 50 feet on Hillsboro Road at 2211 Hillsboro Street, and being the property of said A.J. and Claire Brown, a brick store newly erected. 34 Tenn.App. at 635, 241 S.W.2d 871

This Court held the description to be sufficient.

The present description does not name the owners of the property or refer to its improvement. It therefore does not come within the holding of *Brown v. Mays.*

In *Kirshner v. Feigenbaum*, 180 Tenn. 476, 176 S.W.2d 806 (1944) there was a suit by a lessor to recover possession of office space leased to the defendant. The leased premises were described as:

Office space in the Exchange Building located at 311 Church Street, and being Office No. 209, and storage space in basement.... 180 Tenn. at 478.

The Supreme Court held that the name of the district, town, county, state or nation is not required where the writing is sufficiently specific to enable identification of the land. The Court observed that even though there might be Exchange Buildings in other cities, the possibility that any such building might be an office building with basement storage space located on Church Street at Number 311, and having an office number 209 was too remote to raise a reasonable doubt as to the identity of the property leased.

No such identifying peculiarity is found in the present document.

The document does not identify the property to be sold as "Massey–Craig Motors, 2122 North Locust Avenue, Lawrenceburg, Tennessee" as insisted by plaintiffs. Such description is the location of Massey–Craig Motors which was not owned by that corporation, but by the individual stockholders of Massey–Craig Motors.

If, as found by the Chancellor, the document expressed an intention to sell (and buy) Massey–Craig Motors as a going business, including the real estate leased by and used by it, then there were two parcels involved in the sale: the parcel leased from Massey and Craig and the parcel leased from others. There is no insistence or admission that the second parcel was included in the transaction.

In *Baliles v. Cities Service Co.*, Tenn. 1979, 578 S.W.2d 621, suit was brought for specific performance of a contract to sell property described as

lots 99 and 100 in Cherokee Hills for residential purposes. 578 S.W.2d at 622.

The Supreme Court held the description to be inadequate, but enforced the contract under the doctrine of estoppel where sellers had placed the buyer in possession, permitted him to construct improvements thereon and aided him in securing a loan for this purpose.

In *Gorbics v. Close,* Tenn.App.1986, 722 S.W.2d 672, an action was brought to enforce a contract to sell land described as:

> a one acre tract of land on the northwest corner of my land.... 722 S.W.2d at 673.

This Court held the description fatally deficient and refused enforcement even though plaintiffs had placed a trailer home in the vicinity and had made certain improvements, the value of which was less than the value of the occupancy.

The document in the present case simply does not set out an agreement for the sale of a particular tract of land, and is therefore unenforceable.

■ Appellant's second issue is as follows:

2. Whether this action is barred by the statute of frauds (T.C.A. § 29–2–101) because the paperwriting was not signed by the buyer named in the writing, Bond Motors, Inc., nor by its authorized agent.

The phrase "signed by the party to be charged therewith" means the owner of the land. Evidence of acceptance of the contract upon the part of the purchaser may be in parol as at common law. *Patterson v. Davis,* 28 Tenn.App. 571, 192 S.W.2d 227 (1945), and authorities cited therein.

It may be argued with considerable logic that it is grossly inconsistent to require the signature of the seller to validate a sale of real estate but to enforce the same agreement against the buyer who signed no written memorandum. No authority has been found wherein a buyer was forced to specifically perform or pay damages without his signature. All authorities examined involved an effort by the buyer to force the seller to specifically perform. Nevertheless, the Legislature has declared the policy of the State in words which the Supreme Court has held to mean that only the seller's signature is necessary for a valid contract to sell land. Any change in the law or its interpretation must come from the Legislature or the Supreme Court. Until then, it appears that prospective buyers of land should beware of any oral discussion of a written offer to sell real estate.

No viable merit is found in appellants' second issue.

Appellant's third issue is as follows:

3. Whether this action is barred by the statute of frauds (T.C.A. § 47–1–206) because the alleged contract was for the sale of personal property valued in excess of $5,000.00, which was not reasonably identified in the writing.

T.C.A. § 47–1–206(1) provides:

> Except in the cases described in subsection (2) of this section, a contract for the sale of personal property is not enforceable by way of action or defense beyond five thousand dollars ($5,000) in amount or value of remedy unless there is some writing which indicates that a contract for sale has been made between the parties at a defined or stated price, reasonably identifies the subject matter, and is signed by the party against whom enforcement is sought or by his authorized agent.

The exception of subsection 2 is for sales of goods of a price of $500.00 as provided in § 47–2–201 and security interests.

Plaintiffs insist that the document quoted above conforms to subsection (1) if § 47–1–206. The sales prices are stated variously in the instrument. On the first page, the prices are:

> New car inventory—at invoice
> Parts—at book value
> Random parts—$7,000
> C—P.D. Franchise—No price

On the reverse side of the first page, the stated prices are:

> "Continued real estate transaction" $5,700

Thereafter, the following figures appear without identification:

> 480,000
> 40,000  check
> 440,000  ASAP

The committee comment under § 47–1–206 states:

> ... troubling abuses are avoided when the dollar limit is exceeded by requiring that the subject matter be reasonably identified in a signed writing which indi-

cates that a contract for sale has been made at a defined or stated price.

■ It is clear from the record that the document in question purports to evidence a sale of personal property of value in excess of $5,000.00 and that it is not signed by the defendant, Ed Bond Motors, Inc. As to this defendant, the defense of § 47–1–206 is most certainly good.

■ As to the remaining defendants, neither the subject matter nor the price thereof is reasonably identified, so that the document does not pass muster under § 47–1–206 as to the remaining defendants.

Appellants' third issue is found to have merit.

■ Appellant's fourth issue is as follows:

4. Whether this action is barred by the statute of frauds (T.C.A. § 47–2–201) because the alleged contract was for the sale of goods of a value in excess of $500, which goods were not reasonably identified in the writing.

T.C.A. § 47–2–201(1) provides:

Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars ($500) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

To the extent that the subject contract deals with the sale of goods of price $500.00 or more, the defense of Ed Bond Motors, Inc., is good because its signature does not appear on the subject document. As to the other defendants, the paper writing is not sufficient to indicate that contract for sale has been made between the parties.

There is merit to appellants' fourth issue.

■ Appellants' fifth issue is as follows:

Whether the defendants are equitably estopped from relying on the statute of frauds.

This Court cannot agree with the oral finding of the Trial Court that the defendants were estopped to plead the statute of frauds by entering the premises occupied by Massey–Craig Motors and, to some degree exercising management and/or control over the conduct of business on the premises. The record explains fully the reasons for this action and the reasons for abandoning the premises.

The basic cause of this controversy was the failure of plaintiffs to fully disclose to defendants the precarious state of the affairs of Massey–Craig Motors, including:

1. Prior cancellation of Chrysler Franchise.
2. Existing encumbrances on assets.
3. Cancellation of Chrysler line of credit.
4. True title of the real estate.

If estoppel is applicable to this case at all, it is estoppel against plaintiffs for their failure to disclose information pertinent to the property which they attempted to sell.

Where defendants did occupy the premises and use or sell some of the services or property of plaintiffs, defendants should be accountable to plaintiffs for the reasonable value of the services or property so used or sold. This, however, does not support estoppel as to pleading the statute of frauds in defense of a suit for specific performance or damages for breach of contract.

Plaintiffs cite *Evans v. Belmont Land Co.*, 92 Tenn. 348, 21 S.W. 670 (1893). In that case, the Supreme Court held that the facts of the case did not support equitable estoppel in plaintiffs' favor. Moreover, the Court said:

This remedy is always so applied as to promote justice. It is available only for protection, and it cannot be used as a weapon of assault. It accomplishes that which ought to be done between man and man, and is not permitted to go beyond

that. [*Dickerson v. Colgrove*] 100 U.S. [(10 Otto)] [578, 25 L.Ed. 618] [1879]. 92 Tenn. at 284, 285, 21 S.W.2d 670.

Appellants' fifth issue is meritorious.

■ Appellant's sixth issue is as follows:

Whether it is impossible for the plaintiffs to perform the alleged contract because they had terminated their franchise with Chrysler–Plymouth–Dodge and encumbered the property to be conveyed.

Although it is insisted by plaintiffs that the Chrysler franchise was not cancelled by Chrysler until April 9, a copy of the cancellation by Massey–Craig was in the possession of Chrysler Credit at all times after January 8, 1986, and Chrysler Corporation had been notified by Chrysler credit to stop shipping cars to Massey–Craig. Massey–Craig had no legal or moral right to attempt to sell a franchise under the circumstances.

■ A buyer may be discharged if there is a breach of the contract in some substantial particular which goes to the essence of the contract and renders the seller incapable of performance as intended. *German American Monogram Mfrs. v. Johnson*, 133 Tenn. 571, 182 S.W. 595 (1916).

Appellants' sixth issue has merit.

Appellants' seventh and eighth issues are as follows:

7. Whether the Court erred in awarding judgment against the individual defendants when the writing on which the action was based was between Massey–Craig Motors, Inc., as seller, and Bond Motors, Inc., a corporation, as buyer.

8. Whether the complaint failed to state a claim upon which any relief could be granted to the plaintiffs against the individual defendants.

No merit is found in these issues. T.C.A. § 48–1–1405, *Thompson and Green Machinery Inc., v. Music City Lumber Company*, Tenn.App.1984, 683 S.W.2d 340.

■ Appellant's ninth and eleventh issues are as follows:

9. Whether the paperwriting is so lacking in terms which plaintiffs allege were part of the contract and is so ambiguous and uncertain and incapable of reasonable construction that it will not support a recovery against the defendants.

11. Whether there was a contract between the parties.

This Court finds the document relied upon to be so devoid of specificity and meaning as to be no contract at all. It is possible that the parties had in their separate minds the nature of an agreement, but there is no evidence that their mental concept of the agreement was even orally agreed between then, much less expressed in a written contract.

The terms of a contract must be sufficiently definite to be enforced. *V.L. Nicholson Co. v. Transcon Inv. & Financial Ltd., Inc.*, Tenn.1980, 595 S.W.2d 474; *Price v. Mercury Supply Co.*, Tenn.App. 1984, 682 S.W.2d 924, *Forest Inc. of Knoxville v. Guaranty Mortgage Co., Inc.*, Tenn.App.1975, 534 S.W.2d 853.

Appellants' ninth and eleventh issues are meritorious.

Appellants' tenth issue is:

Whether Massey–Craig Motors, Inc., authorized the sale or execution of the paperwriting.

No authority is cited that the two sole stockholders of a corporation cannot make a binding contract for the corporation. No such authority is known to this Court.

No merit is found in the tenth issue.

Appellants' 12th and 13th issues are as follows:

12. Whether plaintiffs breached the alleged contract and the implied warranties set out in T.C.A. § 47–2–312 and § 47–2–725 by failing to disclose the sales tax lien, Chrysler credit lien and deed of trust.

13. Whether plaintiffs violated T.C.A. § 47–2–312, requiring them to convey the property, free from any security interest, lien or encumbrance of which the purchaser had no knowledge at the time the paperwriting was executed.

As already indicated, the failure of plaintiffs to make appropriate disclosure of the infirmities in the title of the seller to the various items to be sold was sufficient to repel them from enforcing their contract. See T.C.A. §§ 47–2–312(1) and 47–2–725(2).

Moreover, before a seller can claim specific performance (recovery of purchase price) or damages for refusal of performance, the seller must show a satisfactory tender of that which was to be purchased. In the present case this would include: (1) a tender of a deed conveying good title to the real estate; (2) a tender of proper documents for the transfer of a viable franchise for selling Chrysler products; (3) tender of a conveyance of all the personal property involved free of encumbrance. None of these prerequisites are shown.

The 12th and 13th issues are meritorious.

Appellant's 14th and last issue is as follows:

14. Whether the Court erred in setting the amount of the compensatory damages without regard to the fair market value of the property.

If damages be due a seller for failure of the buyer to accept performance, the measure of damages is the difference between the contract price and the fair market value of the property at the time of the breach. *Yarbrough v. Stiles*, Tenn. 1986, 717 S.W.2d 886; *Turner v. Benson*, Tenn.1984, 672 S.W.2d 752. The record shows the fair market value of the realty on the "date of breach" to be $375,000. The record shows that, "at the time of breach" the office equipment was worth $10,000 and the parts were worth $34,000. There is no evidence of the value of other items "at the time of breach", however, on January 22, 1986, Mr. Massey gave Mr. Thornton a statement that the used car moveable building was worth $10,000 and the shop equipment was worth $20,000. The foregoing figures total $449,000.

The 14th issue is meritorious.

This Court is satisfied that the alleged contract is unenforceable as a matter of law for the various reasons set out above.

This Court is also satisfied that the $10,000 counterclaim should be disallowed and that this portion of the judgment should be affirmed.

The judgment of the Trial Court dismissing the counterclaim is affirmed. In all other respects, said judgment is reversed and the suit of plaintiffs is dismissed. All costs, including costs of this appeal are taxed against plaintiffs. The cause is remanded for any further necessary procedures.

Affirmed in part, reversed in part and remanded.

LEWIS and CANTRELL, JJ., concur.