PAUL J. MYER and ) 
CAROLE A. MYER, )
 )
     Plaintiffs/Appellees, )
 ) Appeal No.
 ) 01-A-01-9701-CH-00014
VS. )
 ) Williamson Chancery
 ) No. 23547
MARK WHITACRE, )
GINGER WHITACRE and FRAN )
HAWORTH, individually and d/b/a )
CENTURY 21 HAWORTH HOMES, )
 )
     Defendants/Appellants. )

FILED

July 2, 1997

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE


APPEALED FROM THE CHANCERY COURT OF WILLIAMSON COUNTY
AT FRANKLIN, TENNESSEE

THE HONORABLE HENRY DENMARK BELL, JUDGE


HUGH C. HOWSER, JR.
2500 Nashville City Center
511 Union Street
Nashville, TN 37219
     Attorney for Plaintiffs/Appellees

LISA M. CARSON
306 Court Square
Franklin, TN 37064
     Attorney for Defendants/Appellants Mark Whitacre and Ginger Whitacre




AFFIRMED AND REMANDED




BEN H. CANTRELL, JUDGE



CONCUR:
TODD, P.J., M.S.
KOCH, J.

# **O P I N I O N**

In this case involving a breach of a real estate contract, the appellant asserts that the evidence preponderates against the amount of damages found and the award of prejudgment interest. We affirm the judgment of the trial court.

## **I.**

In July of 1995 the sellers and buyers executed a contract for the sale of a house and lot at 2021 Lynnwood Drive in Franklin for $935,000. Closing was set for August 11, 1995. On August 9, 1995 the purchasers notified the sellers that they would be unable to complete the sale.

The sellers immediately put the property back on the market but were unable to make a sale until June of 1996, when the property sold for $845,500. In an action against the purchasers for breach of contract, the chancellor awarded the sellers $89,500 as general damages for the breach (plus special damages that are not at issue here). The court also awarded prejudgment interest from the original closing date of August 11, 1995.

## **II.**

The parties agree that the correct amount of damages for the breach of a contract for the sale of real estate is the difference between the contract price and the fair market value of the property as of the date of the breach. *Yarbrough v. Stiles*, 717 S.W.2d 886 (Tenn. App. 1986); *Turner v. Benson*, 672 S.W.2d 752 (Tenn. 1984).

- 2 -

The date of the breach is ordinarily the closing date. *Id.*[1] The parties diverge as to what proof is relevant to the question of the fair market value at the time of the breach.

This record shows that immediately after the sale fell through the sellers had their agent contact other prospective buyers who had expressed an interest in the property. None of the prospective buyers responded. The agent advertised the property and aggressively sought to market it, because the sellers had partially moved out in order to give possession to the buyers. The agent's efforts, however, failed to produce a willing buyer until June of 1996.

The agent testified that in her opinion the value of the house in July or August of 1995 was in a range of $920,000 to $980,000. She said that when a house first comes on the market there is a short window of opportunity when buyers compete for the property, but that when the sale fell through, the excitement was gone and people were not as interested as they had been.

One of the sellers testified that he thought the $935,000 was a fair price for the house in the summer of 1995. In fact, within a few days of listing the house for sale, the sellers received an offer for $900,000.

The buyers contend that what the property sold for ten months later is irrelevant. Therefore, they argue, the only evidence in the record is that the property was worth between $920,000 to $980,000. We disagree. We think that what the property finally sold for is some evidence of its value at the time of the breach. In *Turner v. Benson*, 672 S.W.2d 752 (Tenn. 1984), a case where the property sold a year later for $1,000 more than the previous contract price, the Supreme Court said:

---

[1]It is arguable that the buyers breached the contract when they announced on August 9, 1995 that they would not complete the sale. But neither party makes an issue of the difference in the two dates.

> "[C]onsidering the resale to have taken place only about one year after the breach, and it being an arms-length transaction, rather than a forced sale at auction, we think it reasonable to infer that the fair market value of the plaintiff's residence at the time of the breach was roughly equivalent to the contract price."

672 S.W.2d at 755. While the resale price is not conclusive, as the sellers contend, it is some evidence of the value -- especially where the property has been aggressively marketed in the intervening months and is sold in an arms-length transaction.

The chancellor's finding with respect to the value of the property at the time of the breach is presumed to be correct, unless the preponderance of the evidence is otherwise. Rule 13(d), Tenn. R. App. P. We can't say that the evidence preponderates against that finding. The evidence is not clear either way. The testimony of the selling agent and of one of the sellers, while competent, is certainly not conclusive. Their opinions were based on estimates of value and not on a study of the market. We therefore affirm the chancellor's finding of the difference between the contract price and the value at the date of the breach.

## III.

### Prejudgment Interest

The chancellor awarded prejudgment interest at 10% per annum on the net judgment from the date of the breach. The purchasers insist that the sellers did not ask for prejudgment interest in their complaint and did not specify prejudgment interest as an element of their damages in answering the purchasers' interrogatories. In addition, they assert that the chancellor abused his discretion by awarding prejudgment interest when there was a genuine controversy over the amount of the damages.

The award of prejudgment interest in Tennessee is governed by statute. Tenn. Code Ann. § 47-14-123 provides:

> Prejudgment interest, i.e., interest as an element of, or in the nature of, damages, as permitted by the statutory and common laws of the state as of April 1, 1979, may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum . . . .

The statute allows prejudgment interest as an element of damages "to be allowed in accordance with the principles of equity." *Schoen v. J.C. Bradford & Co.*, 667 S.W.2d 97 (Tenn. App. 1984).

With respect to the fact that prejudgment interest was not raised in the complaint, we find from the record that the issue was in fact tried by consent. *See* Rule 15.02 Tenn. R. Civ. P. The record is clear that at the beginning of the trial, the plaintiffs were asserting the right to collect prejudgment interest. The defendants' only objection was on the merits -- not on the fact that the point had not been raised in the pleadings. We also note that prejudgment interest is not considered special damages that must be pled specially. *Mitchell v. Mitchell*, 876 S.W.2d 830 (Tenn. 1994).

We think the question of prejudgment interest was within the discretion of the chancellor, and we find no abuse of that discretion. *See B.F. Myers & Son v. Evans*, 612 S.W.2d 912 (Tenn. App. 1980). If the difference in the contract price and the value was $89,500 on August 11, 1995, the sellers were deprived of that benefit from and after that date. In order to be made whole, they should be compensated for the loss of use of that benefit. We do not think the chancellor abused his discretion.

We affirm the judgment of the trial court and remand the cause to the Chancery Court of Williamson County for any further proceedings necessary. Tax the costs on appeal to the appellants.

_____
BEN H. CANTRELL, JUDGE

CONCUR:


_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
WILLIAM C. KOCH, JR., JUDGE