**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0753n.06
Filed: October 11, 2006

No. 05-6297

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| GEORGE W. STINSON; ED D. LEWIS, | ) | |
| | ) | |
| **Plaintiffs-Appellants,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| CRYE-LEIKE, INC.; GEORGE ALEXANDER; WILLIAM DESHIELDS, | ) | |
| | ) | **O P I N I O N** |
| | ) | |
| **Defendants-Appellees.** | ) | |
| | ) | |

**Before: BATCHELDER, and MOORE, Circuit Judges; HOOD,[*] District Judge.**

**KAREN NELSON MOORE, Circuit Judge.** Plaintiffs-Appellants George W. Stinson ("Stinson") and Ed D. Lewis ("Lewis") appeal the dismissal, pursuant to renewed motions for judgment as a matter of law, of their breach-of-contract claim against Defendant-Appellee William DeShields ("DeShields"), and their claim against DeShields's agents, Defendants-Appellees Crye-Leike, Inc. ("Crye-Leike") and George Alexander ("Alexander"), for breach of the statutory and common-law duties to exercise reasonable skill and care in providing services to all parties to the transaction in issue. Because a reasonable jury could have concluded that there was a valid contract between Stinson, Lewis, and DeShields, we **REVERSE** the district court's grant of the renewed

---

[*]The Honorable Joseph M. Hood, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation.

motions for judgment as a matter of law, and we **REMAND** to the district court to reinstate the jury verdict in favor of the plaintiffs.

## I. BACKGROUND

The plaintiffs own real property on Cowan Street in Nashville, Tennessee, which included a large nightclub called The Connection of Nashville (collectively "The Connection"). In May 2003, Alexander, a real estate agent for Crye-Leike, acting as an agent for DeShields, approached Stinson about buying The Connection. The parties never reached an agreement.

In September 2003, on behalf of DeShields, Alexander again contacted Stinson to inform Stinson that DeShields was still interested in purchasing The Connection. Stinson and DeShields spoke directly over the phone, reaching an agreed price of $1.5 million for The Connection, with DeShields paying the commission.

Once the parties had agreed on a price, Eric Haner ("Haner"), the attorney representing the plaintiffs in the negotiations, drafted an addendum to the contract by cutting and pasting portions from a previous correspondence. Included in the addendum was a provision providing that DeShields would make an earnest-money deposit. No one had told Haner to include this provision in the addendum, and the parties had previously decided that no earnest money was required. Stinson and Lewis signed the contract and addendum on September 29, 2003, and then sent it to Alexander so that DeShields could sign the documents. Alexander faxed the contract to DeShields for his signature. On the fax cover sheet accompanying the contract, Alexander wrote, "Scratch out [earnest-money provision] write in seller agreed no earnest money required." Joint Appendix ("J.A.") at 457 (Fax Cover Sheet). DeShields crossed out the portion regarding earnest money and

2

then signed the contract and addendum on September 29, 2003. J.A. at 214 (Trial Tr. Vol. 1 at 112) (Haner Test.); 458-61 (Contract); 462 (Addendum).

Later that day, Alexander and Haner had a conversation regarding the crossed-out earnest-money provision. According to Haner, the conversation took place as follows:

> A. . . . And I called [Alexander]. And I said, I got everything back, I noticed that there was a strike-out on the earnest[-]money provision. Is there any particular reason?
> And he said, well, I had spoken to Mr. DeShields, and he reminded me, and I remembered it when he told me, when they first met with Mr. Stinson at the property, they discussed that issue, and Mr. Stinson evidently told them that the earnest[-]money provision was not important, it was not necessary.
> I said, well, I didn't know that. I said, let me call Mr. Stinson, and if that was the case, we're fine. If not, I will call you back. He said, okay.
> So I called Mr. Stinson and verified that with him. And he said yes. I told them that back in May, it's not necessary, I said, if you are fine with that, it's no big deal, it doesn't affect the purchase price, it's just a deposit, it really means nothing. If you are okay with that, not having a deposit, then it's no big deal. And that was it.
> Q. "At that point did you believe that the parties had reached an agreement?"
> A. "Yes, absolutely. . . ."

J.A. at 214-15 (Trial Tr. Vol. 1 at 112-13) (Haner Test.). Haner further testified that Alexander told him that the contract was effective and was valid unless he heard back from Haner. J.A. at 229 (Trial Tr. Vol. 1 at 127) (Haner Test.). Alexander also signed the contract, writing in September 30, 2003, as the effective date. J.A. at 461 (Contract).

The parties began preparing for the closing, scheduled for January 2, 2004. The plaintiffs called a meeting of their employees, informing them that The Connection was sold. J.A. 128-29 (Trial Tr. Vol. 1 at 26-27) (Stinson Test.). On October 28, 2003, Haner contacted Alexander to set the specific time for closing. J.A. at 217-18 (Trial Tr. Vol. 1 at 115-16) (Haner Test.). According

3

to Haner, Alexander informed Haner that closing was set to occur on time, never indicating that there was any problem. J.A. at 217 (Trial Tr. Vol. 1 at 115) (Haner Test.).

The day for closing came and went with no closing. It was not until after the closing date had passed that Alexander first asserted that the addendum should have been initialed and that there was no contract.

The plaintiffs filed a complaint alleging breach of contract against DeShields, and breach of common-law duties and statutory duties against Alexander and Crye-Leike in their capacities as real estate agent and agency. The case went to trial, and the jury was instructed that in order to find that a contract existed, the jury had to determine, *inter alia*, that an offer was accepted and that there was a meeting of the minds on the issue of earnest money. The jury found a valid contract, returning a verdict of $193,419.60 against DeShields and $128,946.40 against Alexander and Crye-Leike.

The defendants filed motions for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure. Finding that the evidence was insufficient, as a matter of law, to support the jury's finding that a contract existed, the district court granted the defendants' motions, overturned the jury's verdict, and dismissed the case.

## II. DESHIELDS'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

We review de novo a district court's decision to grant judgment as a matter of law pursuant to Rule 50(b). *K&T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 175 (6th Cir. 1996). Rule 50 of the Federal Rules of Civil Procedure sets forth the standard that the district court must follow when presented with a motion for judgment as a matter of law:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue,

4

the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

FED. R. CIV. P. 50(a). If the court does not grant a motion for judgment as a matter of law at the close of all the evidence and a verdict is returned, the movant may, no later than ten days after the entry of judgment, renew its request for judgment as a matter of law. FED. R. CIV. P. 50(b).[1] In a diversity action, review of a Rule 50 motion based on sufficiency of the evidence is governed by the forum state's law. *K&T Enters., Inc.*, 97 F.3d at 176.

Under Tennessee law, the reviewing court must "take the strongest legitimate view of the evidence in favor of the opponent of the motion, allow all reasonable inferences in his or her favor, discard all countervailing evidence, and deny the motion where there is any doubt as to the conclusions to be draw[n] from the whole evidence." *Arms v. State Farm Fire & Cas. Co.*, 731 F.2d 1245, 1248 (6th Cir. 1984) (quoting *Holmes v. Wilson*, 551 S.W.2d 682, 685 (Tenn. 1977)). "A verdict should not be directed during, or after, trial except where a reasonable mind could draw but one conclusion." *Id.* (quoting *Holmes*, 551 S.W.2d at 685).

A valid contract, under Tennessee law, requires a meeting of the minds between the parties. *Canton Cotton Mills v. Bowman Overall Co.*, 257 S.W. 398, 402 (Tenn. 1924). In order to demonstrate this mutuality of mind, a valid contract requires an acceptance that mirrors the essential

---

[1]The appellants' brief makes passing mention that the "[d]efendants did not renew their Motions at the close of all the proof as contemplated by Rule 50 of the Federal Rules of Civil Procedure." Appellants Br. at 21, n.2. This court "considers issues not fully developed and argued to be waived." *Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995). Because the appellants did not formally present the procedural issue, we need not address it here.

terms of the offer. *Id*. Thus, an acceptance that varies from the offer operates as a rejection of that offer and a new counteroffer. *Id*.

Tennessee recognizes that the mutuality of the mind required to form a contract may be evidenced through the parties' conduct. *Buddy Lee Attractions, Inc. v. William Morris Agency, Inc.*, 13 S.W.3d 343, 349 (Tenn. Ct. App. 1999). "[A]cceptance . . . may be communicated . . . either by a formal acceptance, or acts amounting to an acceptance." *Cole-McIntyre-Norfleet Co. v. Holloway*, 214 S.W. 817, 818 (Tenn. 1919).

In *Yarbrough v. Stiles*, 717 S.W.2d 886 (Tenn. Ct. App. 1986), a Tennessee court of appeals upheld a trial court's holding in favor of the existence of a contract, despite the fact that the plaintiff admitted that the "defendants never formally notified him of acceptance." *Id*. at 888. The trial court based its finding that there was acceptance by conduct on the plaintiff's testimony that the defendants "told him 'many, many times' that they planned to consummate the purchase," and that they "told him 'the closing was coming out in one day. . . .'" *Id*.

In *Union Realty Co. v. Moses*, 984 F.2d 715 (6th Cir. 1993), we applied Tennessee law and reversed a district court's ruling that there was no contract for the sale of real property, concluding that "[t]he parties' conduct . . . manifest[ed] a mutual understanding . . . ." *Id*. at 716. In that case, the parties reached an agreement regarding the location of the earnest-money deposit and the disbursement of the same if the buyer failed to close on the transaction. *Id*. at 716-17. Thereafter, the seller's agent requested additional verification from the bank holding the funds that the funds were on deposit and would be distributed according to the terms of the agreement, writing that the contract was conditioned on receipt of the verification. *Id*. at 717. Such verification was not obtained, and later the buyer failed to close the transaction. The parties disputed the existence of a

6

valid contract in light of the seller's unfulfilled request for additional verification from the bank. *Id*. at 719-20. In reversing the district court and finding a valid contract, we took into consideration the fact that the defense that the contract was never effective did not arise until after the plaintiffs informed the defendants that they were adhering to the contract. *Id*. at 721-22.

The case at bar is factually similar to both of these cases in that there was sufficient evidence presented at trial for a reasonable jury to conclude that the plaintiffs accepted DeShields's counteroffer through their conduct and that there was a meeting of the minds such that a contract was formed. The parties had previously decided no earnest money was required. J.A. 127-28 (Trial Tr. Vol. 1 at 25-26) (Stinson Test.). DeShields crossed out the earnest-money provision, as per the instructions on the fax cover sheet. J.A. at 457 (Fax Cover Sheet). The subsequent conversation between Haner and Alexander regarding that crossed-out provision provides evidence of the plaintiffs' acceptance. Specifically, Alexander told Haner that the contract was effective unless he heard back from Haner. J.A. at 229 (Trial Tr. Vol. 1 at 127) (Haner Test.). Further evidence of acceptance by conduct and a meeting of the minds is found in the conversation occurring in October when Alexander continued to assure Haner that DeShields would be ready to close on time. J.A. at 217-18 (Trial Tr. Vol. 1 at 115-16) (Haner Test.). It was not until after the day set for closing had passed that the defendants first denied the existence of a contract.

Looking at the evidence as a whole, we cannot conclude that there was insufficient evidence for the jury to find that Stinson and Lewis accepted DeShields's counteroffer by conduct and that there was a meeting of the minds between the parties. Therefore, the district court erred in granting DeShields's renewed motion for judgment as a matter of law.

### III.  ALEXANDER AND CRYE-LEIKE'S MOTION FOR JUDGMENT
### AS A MATTER OF LAW

The district court granted judgment as a matter of law to Crye-Leike and Alexander based on its finding that there was no contract between the plaintiffs and DeShields.  The district court determined that because there was no contract, the plaintiffs "cannot establish that they suffered damage by the actions or inactions of Crye-Leike and/or Alexander."  J.A. at 28 (Order at 7).  As it was not unreasonable for the jury to find that a contract existed, the district court erred in granting judgment as a matter of law to Crye-Leike and Alexander.

### IV.  CONCLUSION

Because a reasonable jury could find that a contract existed, and because the district court based its conclusions solely on the fact that a reasonable jury could not find that a valid contract existed, we **REVERSE** the district court's decision and **REMAND** to the district court to reinstate the jury verdict in favor of the plaintiffs.